[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 30 2000
THOMAS K. KAHN
CLERK

————————————

No. 99-4264

————————————

D. C. Docket No. 97-06294-CV-NCR

DEBRA K. EARL,

Plaintiff-Appellant,

versus

MERVYNS, INC.,
d.b.a. MERVYNS CALIFORNIA,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Southern District of Florida

————————————
**(March 30, 2000)**

Before BLACK and HULL, Circuit Judges, and GOODWIN[*], Senior Circuit Judge.

PER CURIAM:

---

[*]Honorable Alfred T. Goodwin, Senior U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Appellant Debra K. Earl appeals the district court's grant of summary judgment in favor of Appellee Mervyns, Inc., on Appellant's claims of violations of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12117, and the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2615(a). We conclude Appellant was unable to perform the essential functions of her job and that she failed to identify any reasonable accommodation that would allow her to perform the essential functions of her job. In addition, we determine Appellee did not terminate Appellant for engaging in a protected activity. We therefore affirm the district court's grant of summary judgment.

## I. BACKGROUND

Appellant began working as a Store Area Coordinator for Appellee's Pompano Beach, Florida, store in late April 1992. One of Appellant's principal responsibilities was preparing her department for the store's morning opening in the morning. This involved obtaining cash for her registers, stocking merchandise, and arranging displays, as well as ensuring that the department was properly equipped to run during the day. When Appellant was scheduled to work, she was the only Area Coordinator in her assigned department.

2

Appellee's punctuality policy allows its employees 15 "punctuality infractions"[1] in a 365-day period. The policy has a three-step corrective action plan that applies to employees who have received 15 punctuality infractions within a 365-day period: (1) a documented warning, (2) a written warning, and (3) a probationary warning. After an employee is given a probationary warning, she may be discharged. The policy provides that an employee who is on the corrective action plan and receives more than two punctuality infractions during the corrective action period will be advanced to the next step of the corrective action policy or fired if no other step is available.

Appellant began arriving to work late beginning in November 1992. On August 23, 1993, Appellant received her first documented warning. According to Appellee, Appellant temporarily controlled her tardiness and was removed from documented warning. Appellant's tardiness recurred, however, and on January 24, 1995, she was again placed on documented warning for being late 29 times within a 365-day period. Appellant then informed Appellee's management that she was suffering from the mental condition Obsessive Compulsive Disorder (OCD), and that this condition was the cause of her tardiness. By May 4, 1995, Appellant had been

[1]A "punctuality infraction" is defined as reporting for work six or more minutes after the scheduled starting time.

late 33 times within a 365-day period, and thus proceeded to the written warning step of the corrective action policy. Six days later, Appellant brought in documentation from her doctor stating that she suffered from OCD, which caused her to be late to work.

On September 23, 1995, Appellant was placed on the third step of the corrective action policy, probationary warning, after being late several additional times during the corrective action period. On that same day, Appellee offered to permit Appellant to "clock in" up to 15 minutes ahead of her scheduled shift and receive appropriate overtime pay, which other employees were not allowed to do. On or about that same day, Appellant requested that she be allowed to "clock in" at whatever time she arrived, without reprimand, and be permitted to make up that time at the end of her shift. Appellee rejected this request as unreasonable. Appellant's doctor admitted that no other accommodations for her OCD would have allowed her to arrive to work on time. In late 1995, Appellee offered to schedule Appellant on the afternoon or evening shift at her request.

Appellant subsequently incurred at least two additional punctuality infractions, which would have warranted dismissal under the terms of Appellee's policy. Nevertheless, on December 7, 1995, although Appellant could have been discharged

under the terms of the policy, Appellee provided Appellant with a second probationary warning.

Appellant was late at least twice more after her second probationary warning. Thus, on Friday, February 16, 1996, Appellee's store manager suspended Appellant for tardiness. The store manager then informed the district team relations leader of Appellant's suspension and inquired as to whether Appellant would be discharged or reinstated. On Monday, February 19, 1996, Appellee decided to terminate Appellant for tardiness. Appellant subsequently was told to report back to the store for an exit interview on February 22, 1996. Appellant did not attend this interview. Rather, her husband appeared and delivered a request for Appellant's disability leave.

Appellant brought an action against Appellee on February 22, 1996, alleging claims pursuant to the ADA and the FMLA. Appellee moved for summary judgment. On January 25, 1999, the district court granted summary judgment in favor of Appellee. Appellant brings this appeal.

## II.  ANALYSIS

In assessing a summary judgment motion, we must examine the evidence in the light most favorable to the non-moving party. *See Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). Summary judgment is proper if there are no genuine issues of material fact. *See id.*

A. <u>ADA Claim</u>

Under the ADA, an employer may not discriminate against "'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Hilburn,* 181 F.3d at 1226 (quoting 42 U.S.C. § 12112(a)). The burden-shifting analysis of Title VII employment discrimination claims is applicable to ADA claims. *See id.* To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998).

The parties do not dispute that Appellant has a disability for purposes of the ADA. Rather, the issue is whether Appellant is "qualified" under the ADA. An individual is "qualified" if she, with or without reasonable accommodation, can perform the essential functions and job requirements of the position the individual holds. *See* 42 U.S.C. § 12111(8); *Southeastern Community College v. Davis*, 442 U.S. 397, 406, 99 S. Ct. 2361, 2367 (1979). An employer must provide reasonable accommodations for employees with known disabilities unless such accommodations would result in undue hardship to the employer. *See Morisky v. Broward County*, 80

F.3d 445, 447 (11th Cir. 1996). An accommodation is reasonable, and thus required under the ADA, only if it allows the employee to perform the essential functions of the job. *See LaChance*, 146 F.3d at 835 (citing 29 C.F.R. § 1630.2(o)(2)(ii) (1995)).

"Essential functions" are the fundamental job duties of a position that an individual with a disability is actually required to perform. *See* 29 C.F.R. § 1630.2(n)(2)(1). In determining what functions are deemed essential, the ADA states "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed. *See* 29 C.F.R. § 1630.2(n)(2)(ii); *Holbrook v. City of Alpharetta*, 112 F. 3d 1522, 1526 (11th Cir. 1997).

Under these standards, we must address whether punctuality is an essential function of Appellant's job as Store Area Coordinator to determine whether she is "qualified" for purposes of the ADA. Appellant admits that without an accommodation she could not arrive at work punctually on a regular basis, regardless of the shift for which she was scheduled. Therefore, if we conclude punctuality is an

essential function of Appellant's job, then Appellant cannot perform the essential functions of her job without an accommodation.[2]

Appellant argues we must examine the specific aspects of her position to determine whether punctuality is an essential or merely marginal function of her job. Appellant asserts Appellee failed to present any evidence that Appellant was unable to complete the duties of her job because of her lateness and that Appellee failed to present any evidence of lost sales, lost profits, disruption of store operations, or increased theft because of her lateness.

Despite these assertions, we conclude punctuality is an essential function of Appellant's job as Store Area Coordinator. Initially, as directed by the ADA, *see* 42 U.S.C. 12111(8), we note Appellee placed a high priority on punctuality. Appellee's policy handbook contained a detailed punctuality policy and Appellee implemented a comprehensive system of warnings and reprimands for violations of the policy. The policy specifically states that "unscheduled absences or repeated tardiness make it difficult for your teammates to do their jobs and serve our guests . . . ." The record also indicates that Appellee consulted Appellant more informally on several occasions about the consequences of her repeated tardiness.

---

[2]As discussed below, this does not end our inquiry. Rather, we also must determine whether Appellant can perform her job with a reasonable accommodation. *See LaChance*, 146 F.3d at 835.

In addition to Appellee's description of Appellant's job, the nature of Appellant's position provides further support for the conclusion that punctuality is an essential function of her job. We previously have held that regular attendance is an essential function of a housekeeping aide job, noting that, "[u]nlike other jobs that can be performed off site or deferred until a later day, the tasks of a housekeeping aide by their very nature must be performed daily at a specific location." *Jackson v. Veterans Admin.*, 22 F.3d 277, 279 (11th Cir. 1994); *see also Davis v. Florida Power & Light Co.*, 11th Cir., 2000, _ F.3d. _ (Nos. 99-4076, 99-10524, March 10, 2000). Similarly, unlike other jobs that can be performed without regard to a specific schedule, the tasks of Appellant's job as store area coordinator by their very nature must be performed daily at a specific time.

When scheduled for the first morning shift, Appellant was responsible for preparing her department for business that day. When scheduled for a later shift, Appellant's arrival would relieve the Area Coordinator who was working the prior shift. Thus, if Appellant were tardy in the morning, her area would not be ready for the usual influx of morning customers. If Appellant were tardy in the afternoon or evening, the Area Coordinator from the previous shift would be forced to work a longer shift. These problems were exacerbated by the relatively small number of area coordinators in Appellee's store.

In light of the importance of Appellant's timely presence at her job, in conjunction with Appellee's emphasis on the importance of punctuality, we conclude punctuality is an essential function of Appellant's job as Store Area Coordinator. Appellant therefore cannot perform the essential functions of her job without an accommodation.

We next must determine whether any reasonable accommodation by Appellee would have enabled Appellant to perform this function. *See Jackson*, 22 F.3d at 281. Appellant argues Appellee failed to begin an "interactive process" to determine a reasonable accommodation for her and failed to act in good faith in finding a reasonable accommodation. Appellant also claims Appellee failed to show undue hardship. These arguments are without merit.

The burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee, as does the ultimate burden of persuasion with respect to showing that such accommodation is reasonable. *See Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997). Furthermore, "where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant." *Willis v. Conopco, Inc.*, 108 F.3d 282, 285 (11th Cir. 1997). Finally, before an employer has a duty to show undue hardship,

the plaintiff first must show that a reasonable accommodation exists. *See id.* at 286.

Appellant's psychiatrist testified that there was nothing Appellee could have done to help Appellant arrive at work on time. In addition, Appellant admitted she was unable to arrive at work on time even when scheduled for an afternoon or evening shift. The only "accommodation" Appellant identified was to allow her to clock in at whatever time she arrived, without reprimand, and to permit her to make up the missed time at the end of her shift.

Based on these facts, Appellant has not met her burden of identifying a reasonable accommodation. We have noted that "[t]he use of the word 'reasonable' as an adjective for the word 'accommodate' connotes that an employer is not required to accommodate an employee in any manner in which that employee desires." *Stewart*, 117 F.3d at 1285 (internal quotation omitted). In addition, we have stated that "[a]n employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job." *Holbrook*, 112 F.3d at 1528 (internal quotation omitted). A request to arrive at work at any time, without reprimand, would in essence require Appellee to change the essential functions of Appellant's job, and thus is not a request for a reasonable accommodation. Appellee was therefore under no duty to engage in an "interactive process" or to show undue hardship.

11

Appellant's failure to identify a reasonable accommodation is fatal to her ADA claim. Because Appellant could not, even with a reasonable accommodation, perform the essential functions of her job, Appellant is not a "qualified" individual under the ADA. Consequently, Appellant's ADA claim fails.

B. FMLA Claim

To state a claim under the FMLA, a plaintiff must show that: (1) she availed herself of a protected right; (2) she suffered an adverse employment decision; and (3) there is a causal connection between the protected activity and the adverse employment decision. *See Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1283 (11th Cir. 1999); *Gleklen v. Democratic Congressional Campaign Comm., Inc.*, 199 F.3d 1365, 1368 (D.C. Cir. 2000).

It is undisputed that Appellant availed herself of a protected right and that she suffered an adverse employment action. The only issue we must address, therefore, is whether a genuine dispute of material fact exists as to whether Appellant suffered an adverse employment action caused by her exercise of a protected right. Appellant argues she presented sufficient evidence to show she was terminated because of her FMLA request. We disagree.

On September 23, 1995, Appellant was placed on probationary warning, the final step of Appellee's punctuality policy. Under the specific terms of this policy,

two subsequent punctuality infractions would have warranted suspension or dismissal. Nevertheless, after at least two more punctuality infractions, on December 7, 1995, Appellee gave Appellant a second probationary warning, which, under the terms of the policy, it was not required to give to her. Following this second probationary warning, Appellant committed at least two additional punctuality infractions. Consequently, on February 16, 1996, Appellee, pursuant to its policy, suspended Appellant for tardiness. On February 19, 1996, the next business day after Appellant was suspended, Appellee, again pursuant to its policy, decided to terminate Appellant. On the same day, Appellant gave constructive notice of her FMLA request.

Based on these facts, Appellant has failed to raise a genuine dispute of material fact as to whether her termination was caused by her FMLA request. Rather, the record demonstrates Appellant was fired, pursuant to the specific terms of Appellee's detailed policy, for repeated and numerous punctuality infractions. In fact, Appellant was given an additional warning, not required by the policy, before Appellee finally fired her. Appellant's FMLA claim therefore cannot survive summary judgment.

## III. CONCLUSION

Appellant was unable to perform the essential functions of her job as Store Area Coordinator, with or without a reasonable accommodation. Appellant is therefore not a "qualified individual" under the ADA. In addition, Appellee did not terminate

13

Appellant because of her engagement in a protected activity.  Accordingly, the district court properly granted summary judgment in favor of Appellee on Appellant's ADA and FMLA claims.

AFFIRMED.