[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

No. 04-16695

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 10, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00003-CV-4

REGINA BISHOP,

Plaintiff-Appellant,

versus

GEORGIA DEPARTMENT OF FAMILY AND
CHILDREN SERVICES,
Floyd County Office,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(March 10, 2006)**

Before EDMONDSON, Chief Judge, BLACK and FAY, Circuit Judges.

PER CURIAM:

On 10 October 2001, Plaintiff Regina Bishop was terminated from her job as an economic support supervisor for the Floyd County, Georgia Department of Family and Children Services (DFCS).[1] Plaintiff claims she was terminated because of her bipolar disorder in violation of the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act of 1973. The district court concluded that Plaintiff failed to present a prima facie case of discrimination and granted summary judgment to the defendant, the Georgia Department of Human Resources. We now affirm the district court in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

Plaintiff started work for the Defendant Georgia Department of Human Resources (DHR) in 1979. In 1985, Plaintiff became an economic support

---

[1]Although Plaintiff performed her job functions for Floyd County DFCS, her actual employer -- and the defendant in this case -- is the Georgia Department of Human Resources.

supervisor for Floyd County DFCS, a division of DHR. Her job responsibilities required her to train new staff in DFCS programs and computer systems.

In 1987, Plaintiff was diagnosed with rapid-cycling bipolar disorder, which causes periodic manic and depressive episodes which can include increased irritability, easy distraction, and verbal hostility. During her manic episodes, Plaintiff admits that she often makes inappropriate statements, has inappropriate interactions with other people, and exercises poor judgment. Plaintiff takes medication to control her bipolar disorder and participates in periodic counseling sessions.

In February and March 2001, Plaintiff received two letters of concern detailing inappropriate acts she had taken during her employment.[2] Plaintiff attributed her acts to her bipolar disorder, and she requested closer communication with and more direct observation from her supervisor, Diane Ray, as a means of curbing her inappropriate behavior.

In May 2001, plaintiff violated DFCS policy when she separately assisted her son and her boyfriend to obtain medical benefits and food stamps. An unwritten DFCS policy requires an employee to alert a supervisor when a family

---

[2]In the first incident, Plaintiff allegedly called a coworker a "bitch." In the second, Plaintiff allegedly used her status with Floyd County DFCS to assist a client in another DFCS office.

member was receiving benefits through the employee's office. The supervisor is then supposed to handle the claim. Plaintiff did not alert Ray that Plaintiff's son and boyfriend had applied for benefits.

The Floyd County DFCS director, Kathy Floyd, initiated an investigation into Plaintiff's activities. Although Plaintiff claimed she was unaware of this policy, some evidence indicates that Plaintiff attended a meeting during which the policy was discussed. The investigation concluded that Plaintiff violated DFCS policy.[3] Plaintiff was fired on 15 October 2001 based on her work history and the results of the investigation. Before she was terminated, Plaintiff applied for disability retirement benefits beginning in November 2001.

Plaintiff filed suit against DHR after receiving a Notice of Right to Sue from the Equal Employment Opportunity Commission. In her suit, Plaintiff alleged that her policy violations were directly caused by her bipolar disorder and

---

[3]The Office of Investigative Services report concluded that:

> The evidence supports the conclusion of negligence, inefficiency and misconduct by Regina Bishop. Ms. Bishop was inappropriately involved in the application process of her son and live-in boyfriend. Her involvement compromised program integrity and internal controls. She violated office procedures/practices, food stamp/county clinic policy and DHR standards of conduct policy. She failed to report the cases to her supervisor and recruited subordinate employees/friends to assist her in processing the cases.

that DHR violated the ADA and the Rehabilitation Act when it terminated her without accommodating her or taking her condition into account.

The district court dismissed Plaintiff's claims under the ADA because the complaint failed to name a state official as a defendant. The court granted summary judgment for DHR on Plaintiff's remaining claims because, the court concluded, "exercising good judgment" was an essential job function that Plaintiff could not perform with or without reasonable accommodation.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment. Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1276-77 (11th Cir. 2001). Summary judgment is appropriate only if there is no genuine issue of material fact and DHR, as the moving party, is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Celotex v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2553 (1986). We view the evidence and all factual inferences therefrom in the light most favorable to Plaintiff, as the non-moving party, and all reasonable doubts about the facts are resolved in Plaintiff's favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999).

## III. DISCUSSION

Plaintiff raises claims under the Rehabilitation Act (the "Act") and the ADA. For reasons discussed in more detail below, Plaintiff's ADA claims are barred by her failure to name a state official as a defendant. Plaintiff's Rehabilitation Act claims, however, are procedurally sound. Like the ADA, the Act "prohibits federal agencies from discriminating in employment against otherwise qualified individuals with a disability." Sutton v. Lader, 185 F.3d 1203, 1207 (11th Cir. 1999).[4] To establish a prima facie case of discrimination under the Act, Plaintiff must show that she is a qualified person with a disability who was subjected to unlawful discrimination as the result of her disability. Id.

To be a "qualified" person Plaintiff must be able to perform the essential functions of her job, with or without reasonable accommodation. Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000). Plaintiff contends that her level of judgment did not impede her ability to perform the essential functions of her job. Plaintiff further asserts that she established a prima facie case of discrimination because she could have performed the essential functions of her job with

_____

[4]The standard for determining liability under the Act is the same as under the ADA. Sutton, 185 F.3d at 1207 n.5.

6

reasonable accommodations, and DHR refused to provide the accommodations she requested.

We conclude that issues of material fact exist to block DHR's motion for summary judgment.

A. Plaintiff's essential job functions

The district court concluded that "exercising good judgment" was an essential function of Plaintiff's job. Essential functions are the "fundamental job duties of a position that an individual with a disability is actually required to perform." Earl, 207 F.3d at 1365 (citing 29 C.F.R. § 1630.2(n)(2)(i)). The factors to consider when deciding whether a particular task is an essential function include these things: (1) the amount of time spent performing the function; (2) the work experience of past and current holders of the position; and (3) job requirements as described in a written job description. 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(n)(3).

Plaintiff's job duties required her to spend 95 percent of her time training new employees. But DHR has furnished no written job description from which we

7

can glean Plaintiff's essential job functions. Nor has DHR provided evidence on the essential functions of past or current holders of Plaintiff's position.

Exercising some degree of good judgment is arguably a function of every occupation. See, e.g., Williams v. Motorola, Inc., 303 F.3d 1284, 1291 (11th Cir. 2002) (deeming as essential functions similarly broad qualities such as "the ability to handle reasonably necessary stress and work reasonably well with others"). But the required degree of acuity and consistency of judgment varies between different jobs. The question at issue here is the degree of acuity and consistency of judgment necessary to perform Plaintiff's job. See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1258 (11th Cir. 2001) (concluding that essential job functions may only be determined through factual inquiry conducted on case-by-case basis).

The evidence includes statements from Plaintiff's two supervisors who testified that Plaintiff was a capable worker who, in reality, exercised the level of good judgment necessary to perform her job adequately for 23 years in DHR's employ. Ray, her immediate supervisor, stated that Plaintiff always met or exceeded expectations in her regular performance reviews and that Ray would have readily accepted Plaintiff back as an employee even with her disability. And, after the two incidents in early 2001 when Plaintiff failed to exercise good judgment, DHR merely issued letters of concern detailing her behavior.

8

Construing this evidence in the light most favorable to Plaintiff, a reasonable fact finder might infer from this record that DHR did not really consider "exercising good judgment" to be an essential function of Plaintiff's job. At the very least, a reasonable fact finder might find that Plaintiff exhibited the degree of acuity and consistency of judgment necessary to be a qualified person for the specific job in this case. We accordingly conclude that sufficient questions of fact exist such that summary judgment should not be granted.

B.  Reasonable accommodation

The district court determined that no reasonable accommodation would allow Plaintiff to exercise good judgment in her job. Plaintiff's requested accommodation merits some discussion.

Plaintiff requested that Ray, her supervisor, meet more frequently with Plaintiff so that Ray could bring inappropriate acts to Plaintiff's attention. Plaintiff contends that more frequent meetings with Ray would have provided a reasonable means of accommodating her bipolar disorder. To support her contention, Plaintiff presented an affidavit from her psychologist stating that closer supervision could have minimized the incidents of Plaintiff's poor

9

judgment.[5]  Some evidence indicates that prior, similar meetings with Plaintiff's former director had minimized the effects of Plaintiff's mood swings.

An employer must provide reasonable accommodations for employees with known disabilities unless the accommodations would cause undue hardship to the employer.  Earl, 207 F.3d at 1365.  Accommodations are reasonable, and thus required under the Act, only if they allow the employee to perform her essential job functions.  Id.  Plaintiff holds the burden of identifying a reasonable accommodation that would allow her to perform the essential functions of her job.  Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1286 (11th Cir. 1997).

Taking the evidence in the light most favorable to Plaintiff, we cannot conclude as a matter of law that Plaintiff's violations of DHR policy were sufficient to render her unable to perform the essential functions of her job with some reasonable accommodation.

_____

[5]Plaintiff's psychologist, Dr. Robert Connell, presented the value of more frequent meetings between Plaintiff and her supervisor as "precisely the type of accommodation that [Plaintiff] needed at the time."  Dr. Connell further testified that "[b]ecause mania frequently interferes with your perception of yourself, the only way you can control it is to self adjust based on the cues provided to you by those around you."  With this accommodation, Dr. Connell testified, Plaintiff would have been able to continue working until her retirement date.

C. Plaintiff's ADA claims

Plaintiff sought equitable adjustment of her retirement date so that she could receive retirement benefits. She raised this claim under the ADA. The district court dismissed the claim because Plaintiff failed to name in her complaint a state official acting in an official capacity. Plaintiff now asks us to remand her ADA claim to the district court so that she may amend her complaint.

Plaintiff had ample opportunity to amend her complaint to include a state official as a defendant.[6] She did not seek such a corrective amendment in district court. We follow the rule that "[a] district court is not required to grant a plaintiff leave to amend [her] complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court." Wagner v. Daewoo Heavy Indus. America Corp., 314 F.3d 541, 542 (11th Cir. 2002)(en banc).

Plaintiff raises this argument for the first time on appeal. We have repeatedly held that "an issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." Access Now, Inc. v.

---

[6]Plaintiff once amended her complaint to change the defendant from Georgia DFCS to the current defendant, Georgia DHR. Plaintiff never named a state official as a defendant.

11

<u>Southwest Airlines Co.</u>, 385 F.3d 1324, 1331 (11th Cir. 2004).  We, therefore, affirm the district court's dismissal of Plaintiff's ADA claim.

## IV. CONCLUSION

The district court properly dismissed Plaintiff's claim under the ADA.  But DHR has not defined "exercising good judgment" sufficiently for the pertinent job or shown that Plaintiff could not meet the degree and consistency of judgment required to perform her essential job functions with reasonable accommodation.  Summary judgment, therefore, is unwarranted on Plaintiff's claims under the Rehabilitation Act, and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**