[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-12294
Non-Argument Calendar
_____

D.C. Docket No. 5:09-cv-00333-MTT


CYNTHIA MARIE IVEY,

Plaintiff-Appellant,

versus

FIRST QUALITY RETAIL SERVICE,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 21, 2012)

Before CARNES, WILSON and FAY, Circuit Judges.

PER CURIAM:

Cynthia Ivey, proceeding *pro se*, appeals from the district court's grant of

summary judgment in favor of First Quality Retail Service ("First Quality") as to

her disability discrimination claim under the Americans with Disabilities Act of

1990 ("ADA"), 42 U.S.C. § 12101, *et seq.*[1]  For the reasons set forth below, we

affirm the district court's grant of summary judgment to First Quality.

## I.

In her complaint, Ivey alleged that First Quality, a manufacturer of

disposable diapers, discriminated against her under the ADA based on her

disability related to her carpal tunnel syndrome.  She further alleged that First

Quality informed her that she would no longer receive light duty work and that it

subsequently terminated her.  Ivey filed exhibits in support of her allegations.

Included was a letter that she submitted to First Quality before her termination,

stating that she could perform the essential duties of her job with accommodations.

She listed the following accommodations: (1) "rotate every 15 minutes"

concerning "repetitive use," "vibratory tool," "awkward use," "gripping," and

"strenuous use," (2) providing her with a step platform, or (3) reassignment to

another position.  Also included were physician-prepared work status reports that

---

[1]  Although Ivey's complaint did not specifically raise a retaliation claim, the district court addressed whether Ivey had shown a *prima facie* case of retaliation in its order granting summary judgment.  However, Ivey has abandoned this claim by not addressing it in her initial brief on appeal.  *See Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 n.1 (11th Cir. 2001).

reflected that Ivey was completely disabled and could not perform any type of work in August 2007 and March 2008.  A work status report dated November 2007, reflected that she could return to work, but it restricted her to lifting no more than 5 pounds and to only using her left arm occasionally, meaning 1 to 33 percent of the time.  The report stated that the restrictions were permanent unless she decided to have further surgery.  Work status reports with dates from June to October 2008, reflected that she could use her hand and arm infrequently, meaning 0 to 2 percent of the time or 1 to 50 times.  This limitation encompassed repetitive use, use of vibratory tools, awkward use, gripping use, and strenuous use.

First Quality filed a motion for summary judgment on the ground that Ivey could not show that she was a qualified individual who could perform the essential functions of her former position.  One of Ivey's physicians had certified that she had limited use of her hands and arms and that this limitation was permanent without further surgery.  Her former position's job description involved lifting, operating equipment, frequent upper arm movement, and repetitive tasks, and she had admitted that she could not perform the essential functions of her job.  First Quality argued that no reasonable accommodations existed, contending that it had no legal duty to provide light duty work.  Further, Ivey's request to rotate through different job duties was not recommended by a physician and no one else had this

schedule.  First Quality submitted various exhibits with its motion.

According to the affidavit of Barbara Cohen, a Human Resources Manager for First Quality at the time of the affidavit's execution, First Quality had previously employed Ivey as a production technician.  Ivey injured her wrists in May 2007, and a physician subsequently performed surgery on her right wrist to alleviate carpal tunnel syndrome.  From September to December 2007, Ivey performed light duty work, which included sweeping and paperwork, through First Quality's program for employees who experience work-related injuries, but are expected to recover.  The program was unavailable to employees with permanent injuries or non-work-related injuries.  On March 27, 2008, First Quality informed Ivey that it was removing her from light duty work and placing her on worker's compensation leave because Ivey's treating physician stated that the restrictions on Ivey's left wrist were permanent unless she had surgery.  First Quality offered to provide Ivey with leave and benefits to assist her in obtaining the surgery, but Ivey refused.

Cohen further attested that First Quality had a policy to remove employees from the payroll who were on occupational-injury leave of absence for longer than 180 days and had not received an extension of leave.  After Ivey had been on leave for over 180 days, Cohen asked Ivey if she wished to request an extension of her

4

leave.  Ivey responded by sending Cohen a treatment and work status report that indicated that Ivey could only use her hands zero to two percent of the time.  First Quality subsequently determined that it had no openings that would accommodate her medical restrictions, and terminated her employment on January 19, 2009.

According to the job description of the production technician position dated after First Quality placed Ivey on leave, over two-thirds of the position involved using hands "to finger, handle, feel" and reaching with hands and arms. Two-thirds or more of the position involved lifting various weights, including up to 50 pounds more than two-thirds of the time.  A primary task involved packaging operations, which involved frequent arm movement and included assembling boxes and picking up diaper bags and placing them in boxes.

Ivey testified in a deposition that, while employed at First Quality, she worked 12-hour shifts for 3 days in a row and then had 4 days off of work.  As a production technician, Ivey packaged disposable diapers at the front of a machine and, when the machine was backed up, used her hands and arms "constantly."  She had to vertically transfer diaper bags weighing up to 8 pounds, as well as lift boxes weighing up to 50 pounds.  After she had worked for First Quality for a period of time, she also began to assist the loading of materials at the back of the machine and running the machine. This work primarily involved using her hands.

5

Ivey further testified that, following her surgery on her left wrist related to her carpal tunnel syndrome, she began to perform light duty work, consisting of sweeping floors and paperwork. She eventually returned to the diaper machine, where she loaded bags and picked up diapers with her hands, but she did not package the diapers. Ivey stated that a man with burned hands had also performed light duty work, but she could not remember his name or supervisor. On February 22, 2008, First Quality informed her that it would no longer offer her light duty work and that it had placed her on workers' compensation leave, without her first requesting it. That was her last day on the job.

Ivey further testified that her written request for an accommodation to First Quality, involving rotating every 15 minutes, meant that every time she used her hands in a specific manner for 15 minutes, she would then rest for 5 minutes. No physician had recommended the rotating schedule, but rather the schedule was based on her estimation of what she could do. She was unaware of any other person working that type of schedule. Nevertheless, she testified that First Quality had a "quality department" position that had a work schedule that would accommodate her. She had also requested a step platform for use in the packaging area in order to modify the awkward position of her hands while doing repetitive work. Ivey stated that performing those job duties she had before her injury

6

required her to do more repetitious work than her physician stated that she could do without accommodation.

Ivey filed a response in opposition to summary judgment. In the fact section of her response, she stated that other employees and her team leader harassed her, laughed at her, and referred to her as "Robo Cop." Next, she argued that she was a qualified individual because she performed her essential duties with the accommodation of a hand brace from May to June 2007, and, following her surgery, she performed the essential functions of light duty work. She argued that a work status report indicated that she could perform the essential functions by using repetitive hand movements and then resting. She also stated that a $60 platform could be purchased for her to assist her with her position.

Following a reply from First Quality, the district court granted First Quality's motion for summary judgment. The court first noted that the parties did not dispute that Ivey was disabled at the time of the alleged discrimination, but rather disputed whether she was a qualified individual. The court determined that the production technician's essential functions included lifting and repetitive hand use and that Ivey's proposed accommodations were either unreasonable or would not allow her to perform her position's essential functions. The court indicated that Ivey appeared to raise a hostile work environment claim in her response, but

7

determined that, because her complaint did not include the claim, the court would not consider it.

## II.

On appeal, Ivey argues that the district court erred in not applying the ADA Amendments Act of 2008 ("ADAAA") in its order granting summary judgment and that she has a disability.[2] She further argues that First Quality did not have a job description of her former position until after it placed her on leave, and, thus, it cannot state that she was unable to perform her job with reasonable accommodations. She asserts that an employer's failure to provide light duty work can constitute a violation of the ADA.

We review the granting of summary judgment *de novo*, construing the facts in the light most favorable to the nonmoving party. *Holly v. Clairson Indus.*, LLC, 492 F.3d 1247, 1255 (11th Cir. 2007). A district court shall grant summary judgment where the evidence shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Id. Pro se*

---

[2] Although most of the allegations in Ivey's complaint occurred before January 1, 2009, the effective date of the ADAAA, First Quality terminated Ivey after that date. *See* Pub. L. No. 110-325, 122 Stat. 3553. Among other things, the ADAAA expanded the definition of "disability." *Id.* § 4. On appeal, First Quality does not dispute that Ivey was disabled, but rather disputes whether Ivey was a qualified individual, which does not implicate the ADAAA. Thus, we do not need to decide whether the ADAAA applies retroactively to Ivey and do not address Ivey's arguments in her brief that she was disabled.

pleadings are held to a less stringent standard than those drafted by attorneys and are liberally construed. *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. *Holly*, 492 F.3d at 1255-56. To show that she is a qualified individual, a plaintiff must show that she can perform the essential functions of the employment position that she holds with or without reasonable accommodations. *Id.* at 1256. An accommodation is reasonable and necessary under the ADA only if it will enable the employee to perform the essential functions of the job. *Id.* However, if the employee is unable to perform an essential function of her job, even with an accommodation, then she is not a qualified individual covered under the ADA. *Id.* The employee has the burden of identifying a reasonable accommodation that would allow her to perform the essential functions of her job. *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000).

Whether a function of a position is essential is evaluated on a case-by-case basis by examining a number of factors. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1230 (11th Cir. 2005). Consideration is given to an employer's judgment of what it believes to be the essential functions of a position, and any

9

written description of the position, which the employer prepared for advertising or interviewing applicants for the job, is considered evidence of a position's essential functions. *Id*. Also considered are factors such as the amount of time spent on the job performing the function and the consequences of not requiring the employee to perform the function. *Id.*

Prior accommodations do not make an accommodation reasonable. *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003) (explaining that the fact that an employer had previously granted indefinite leaves of absence did not make a request for another indefinite leave of absence a reasonable accommodation). The ADA covers people who can perform the essential functions of their jobs presently or in the immediate future. *Id.* We have held that "an employer is not required to accommodate an employee in any manner in which that employee desires." *Earl*, 207 F.3d at 1367. Thus, the ADA does not require an employer to eliminate an essential function of an employee's job, but it may require an employer to restructure a particular job by altering or eliminating some of its marginal functions. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1260 (11th Cir. 2001). Further, although the ADA may require the employer to reassign a disabled employee, that duty does not require the employer to move another employee from a position in order to accommodate the disabled employee or to promote the

10

disabled employee. *Id.* at 1256.

As First Quality does not dispute that Ivey was disabled, the central issue on appeal is whether she was a qualified individual who could perform the essential job functions of a production technician, without accommodation or with a reasonable accommodation. The position's job description indicated that one of the primary tasks was packaging operations, which involved frequent arm movement. Ivey contends that the job description for her former position was dated two months after First Quality placed her on leave, and, thus, no criteria existed to measure whether she could perform her job with reasonable accommodations. However, what constitutes an essential function is not based solely on the employer's job description, but is evaluated based on various factors. *D'Angelo*, 422 F.3d at 1230. In this case, Ivey's own deposition testimony indicates that the position involved "constant[]" use of her hands, lifting, and repetitive hand movements during the packaging of diapers. Thus, in light of Ivey's own testimony, and without relying on First Quality's job description, we conclude that one of the essential functions of Ivey's position involved packaging diapers by using her hands quickly and repetitively.

Because Ivey did not argue that she could perform these essential job functions without an accommodation, we next address whether Ivey satisfied her

11

burden of showing that a reasonable accommodation existed. *Earl*, 207 F.3d at 1367. Ivey asserts on appeal that providing her with a permanent position involving light duty work, which did not involve the packaging of diapers, was a reasonable accommodation. However, the ADA did not require First Quality to permanently provide her with light duty work, as this would require it to eliminate essential functions of the production technician job as it existed, specifically, the repetitive hand movements involved in the packaging of diapers. *See Lucas*, 257 F.3d at 1260. The undisputed evidence shows that First Quality only offered employees light duty work on a temporary basis for those employees with work-related injuries who were expected to recover. Thus, she failed to show that permanently offering her light duty work was a reasonable accommodation.

Ivey also proposed the following accommodations in a letter to First Quality: (1) alternating tasks and taking a 5-minute break after using her hands every 15 minutes; (2) utilizing a step platform; and (3) reassignment. First, with respect to Ivey's proposed rotating-hand-use accommodation and her step platform accommodation, Ivey has failed to show that these would allow her to package diapers by using her hands quickly and repetitively. The physician-prepared work status reports that Ivey filed in the district court provided that Ivey was limited to engaging in repetitive, awkward, gripping, or strenuous use of her hands

12

infrequently, meaning 0 to 2 percent of the time or 1 to 50 times per a day.  In light of the limitations contained in the work status reports and the lack of any evidence demonstrating how, in fact, these accommodations would allow her to repetitively and quickly use her hands, Ivey did not show that these accommodations would allow her to perform the essential functions of her former job.  Next, Ivey has failed to present any evidence showing that her request to be reassigned is a reasonable accommodation.  Although, in her deposition, she indicated that she wished to be reassigned to the quality department, she presented no evidence of any vacancies within it, and First Quality was not required under the ADA to promote Ivey or reassign her to an occupied position.  *See Lucas*, 257 F.3d at 1256.  Thus, she failed to show that reassignment was a reasonable accommodation.

Because Ivey did not propose a reasonable accommodation that would allow her to perform the essential functions of her job, she failed to show that she was a qualified individual and, thus, establish a *prima facie* case of disability discrimination under the ADA.  Accordingly, the district court did not err in granting summary judgment in favor of First Quality on Ivey's disability discrimination claim.

### III.

13

Ivey raises a hostile work environment claim in her initial brief and contends that she was harassed and called names related to her wearing a hand brace at First Quality.  She requests us to be less stringent in requiring her to have raised the claim below, as she is proceeding *pro se*.

A complaint should contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  Although this standard is to be applied liberally,  a defendant is not required to infer all possible claims that could arise out of facts set forth in the complaint at the summary judgment stage.  *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004).  At the summary judgment stage, the proper procedure for a plaintiff to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).  *Id.*  Thus, a claim may not be raised in a response to a defendant's summary judgment motion.  *Id.*; *see Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (providing that the district court properly decided not to allow a plaintiff to raise a new claim at the summary judgment stage).  Although we liberally construe the pleadings of *pro se* litigants, we nevertheless require them to conform to procedural rules.  *See Albra v. Advan, Inc.*, 490 F.3d 826, 827, 829 (11th Cir. 2007) (holding that *pro se* plaintiff failed to properly effect service

14

on defendant in accordance with Fed.R.Civ.P. 4(c) and that the district court's grant of defendant's motion to dismiss was thus proper); *see also Goldsmith v. City of Atmore*, 996 F.2d 1155, 1161 (11th Cir. 1993) (noting that a *pro se* litigant's complaint was deficient because she failed to include in her complaint a demand for the relief sought in compliance with Fed.R.Civ.P. 8(a)).

There are no facts in Ivey's complaint that indicate that she intended to raise a hostile work environment claim, and, thus, she failed to comply with Fed.R.Crim.P. 8.  Ivey first mentioned the facts concerning her hostile work environment claim in response to First Quality's motion for summary judgment. Thus, the district court properly declined to address her claim because she did not include the claim in her complaint.  *See Gilmour*, 382 F.3d at 1315.

## IV.

For the foregoing reasons, we affirm the district court's grant of summary judgment to First Quality.

**AFFIRMED.**