[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-15274
Non-Argument Calendar
_____

D.C. Docket No. 5:14-cv-00464-CLS

KATRINA BAGWELL,

Plaintiff-Appellant,

versus

MORGAN COUNTY COMMISSION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(January 18, 2017)

Before TJOFLAT, WILSON and ROSENBAUM, Circuit Judges.

PER CURIAM:

Katrina Bagwell appeals the district court's grant of summary judgment in favor of Morgan County Commission ("the County") in her employment discrimination lawsuit brought under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 and 12203(a), and Section 504 of the Rehabilitation Act of 1974 ("Rehabilitation Act"), 29 U.S.C. § 794.  On appeal, Bagwell argues that the district court erred by granting summary judgment to the County on her reasonable accommodation claim, "regarded-as" disabled discrimination claim, and her retaliation claim.  After a thorough review of the record, consideration of the parties' briefs, and the applicable law, we affirm.

## I. Reasonable Accommodation Claim

Bagwell contends that the district court erred by finding that the "essential functions" of her groundskeeper job included all of the duties listed on the County's job description.  Additionally, she asserts that she could perform the "essential functions" of the groundskeeper position with or without a reasonable accommodation.

We review *de novo* a summary judgment determination, viewing all evidence in the light most favorable to the non-moving party.  *Ellis v. England*, 432 F.3d 1321, 1325 (11th Cir. 2005).  Summary judgment is appropriate where there is no genuine issue of material fact.  *Id*.  The non-moving party cannot show a genuine issue of material fact through "mere conclusions and unsupported factual

allegations," such as "statements in affidavits that are based, in part, upon information and belief." *Id*. at 1326. Rule 56 mandates the entry of summary judgment, upon motion, against a party who fails to make a showing sufficient to establish an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The ADA prohibits an employer from discriminating against 'a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255 (11th Cir. 2001) (citing 42 U.S.C. § 12112(a)). To state a *prima facie* claim for failure to accommodate under the ADA, the plaintiff must show that: (1) she is disabled; (2) she is a qualified individual; and (3) she was discriminated against by way of the defendant's failure to provide a reasonable accommodation. *Id*. "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Id.* at 1255–56. The same standards govern discrimination claims brought under the Rehabilitation Act as those brought under the Americans with Disabilities Act ("ADA"), and cases decided under one act provide precedent for cases decided

3

under the other.  29 U.S.C. § 794(d); *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000).

A qualified individual with a disability is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8). The plaintiff, in other words, "must show either that [s]he can perform the essential functions of h[er] job without accommodation, or, failing that, show that [s]he can perform the essential functions of h[er] job with a reasonable accommodation." *Davis v. Fla. Power & Light Co.*, 205 F.3d 1301, 1305 (11th Cir. 2000).  "Thus, if [the plaintiff] is unable to perform an essential function of h[er] . . . job, even with an accommodation, [s]he is, by definition, not a qualified individual and, therefore, not covered under the ADA." *Id.* (quotation omitted).

First, we determine the "essential functions" of a job.  We evaluate whether a function is essential on a case-by-case basis.  *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).  An essential function is a fundamental job duty of a position.  29 C.F.R. § 1630.2(n)(1).  A function may be essential because the position exists to perform that function, a limited number of employees can perform the function, or the function is highly specialized and requires expertise. *Id.* § 1630.2(n)(2).  In determining if a task is an essential function, relevant evidence may include: (1) the employer's judgment as to what functions are

4

essential, (2) a written job description, (3) the amount of time spent on the job performing the function, (4) the consequences of not requiring the employee to perform the function, (5) the terms of a collective bargaining agreement, (6) the work experience of past employees in the position, and (7) the current work experience of employees in similar jobs. *Id.* § 1630.2(n)(3). In particular, we give substantial weight to an employer's judgment as to which functions are essential. *Holly v. Clairson Industries, L.L.C.*, 492 F.3d 1247, 1258 (11th Cir. 2007).

For example, in *Holbrook v. City of Alpharetta, Ga.*, we held that two of a police detective's job functions—driving an automobile and collecting certain kinds of evidence—were "essential functions" of the detective position. *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1527–28 (11th Cir. 1997). The plaintiff, a blind detective, argued that the field work his disability prevented him from performing, such as driving or collecting certain evidence occurred rarely in Alpharetta, such that the job functions were not "essential." *Id.* at 1527. We rejected that argument, stating that the record showed that "it is not possible to anticipate, in every instance, precisely what evidence will need to be collected and what duties will need to be performed in any given investigation." *Id.*

Next, we determine whether a reasonable accommodation exists that "enables the employee to perform the essential functions of the job." *Lucas*, 257 F.3d at 1255. An employer must provide such a reasonable accommodation for an

5

employee with a known disability, unless it would result in undue hardship. *Id.* Moreover, the plaintiff bears the burden of identifying a reasonable accommodation. *Id.* The employer's duty to provide a reasonable accommodation is not triggered unless the plaintiff makes a specific demand for an accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999).

Reasonable accommodations may include: "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). An employer is not required to re-allocate job duties in order to change the essential function of the job or remove another employee from a position in order to accommodate a disabled employee. *Earl*, 207 F.3d at 1367; *Lucas*, 257 F.3d at 1256. An employer may be required to restructure a particular job by altering or eliminating marginal functions, but an employer is not required to transform a position into another one by eliminating essential functions. *Lucas*, 257 F.3d at 1260.

For example, in *Holbrook*, the detective suggested that a "minor 'reshuffling'" of case assignments was a "reasonable accommodation" that allowed

6

him to perform all of the essential functions of a police detective. *Holbrook*, 112 F.3d at 1528. We rejected the argument, stating that "being prepared to respond to unexpected events" defined a detective. *Id.* Thus, Alpharetta was not legally required to provide such an accommodation. *Id.* However, we added that it did not mean to "imply that an employer invariably is absolved from having to make reasonable accommodations for a disabled employee whenever a given job involves any measure of unpredictability." *Id.* at 1528 n.4.

Lastly, the regulations governing the ADA provide that, to determine the appropriate reasonable accommodation, an employer may need "to initiate an informal, interactive process with the individual with a disability in need of an accommodation" to identify the person's limitations and potential reasonable accommodations. 29 C.F.R. § 1630.2(o)(ii)(3). However, where the employee fails to identify a reasonable accommodation, the employer has no affirmative duty to engage in an "interactive process" or to show undue hardship. *Earl*, 207 F.3d at 1367. For example, in *Earl*, we held that an employee's request to arrive at work at any time, without reprimand, was not a request for a reasonable accommodation because it changed the essential functions of the job, including punctuality. *Id.* at 1366–67. Because the employee failed to identify a reasonable accommodation, the employer was under no duty to engage in an interactive process or to show undue hardship. *Id.* at 1367.

7

Here, the district court did not err by finding that the essential functions of the groundskeeper position included all of those activities listed in the County's written job description. Although Bagwell contends a material dispute of fact exists because the groundskeeper position in practice involved far fewer essential functions than the written job description, her argument merely asserts that the district court inappropriately weighed the legal factors for determining the "essential functions." For example, the County does not dispute Bagwell's assertion that some of the job functions listed on the job description were rarely performed. Likewise, Bagwell does not dispute the text of the written job description or the County's assertion that the groundskeeper position exists to "maintain" West Park. Accordingly, there is no dispute that the job could entail any function needed to maintain the park, which included, but was not limited to, all of the functions listed in the written job description, as well as the job functions mentioned by Bagwell.

Additionally, the district court did not err in weighting the factors when determining whether these job functions were "essential" as a matter of law. The court gave appropriate deference to Bagwell's assertion that some of the functions were rarely performed, as well as the County's own view of the job functions. *See Holly*, 492 F.3d at 1258. Thus, although Bagwell described her position as one mainly focused on cleaning bathrooms and removing trash, it is clear that the

8

County expected the person in the position to be capable of performing any number of tasks when needed, including all of the tasks listed on the County's written job description. *See* 29 C.F.R. § 1630.2(n)(2). Moreover, Bagwell failed to present any evidence contradicting the County's expectations for the position beyond her own envisioning of the groundskeeper job. Accordingly, the district court did not err by finding that the "essential functions" of Bagwell's job included all of those functions listed in the written job description.

Likewise, the district court did not err by finding that Bagwell was unable to perform the essential functions of the groundskeeper position with or without reasonable accommodation. First, even considering all of the reasonable accommodations suggested by Bagwell throughout this litigation, she could not perform the essential functions of the position. The essential functions required traversing uneven and wet surfaces, standing, and walking, which Bagwell could not perform safely and consistently, even with the assistance of an ATV. Bagwell can only tolerate walking and standing for one-third of the day. Although rotating between sitting, walking, and standing increases Bagwell's tolerance, the nature of the groundskeeper position required the employee's duties to shift based on West Park's specific needs. Accordingly, it would be unreasonable to require the County to ensure Bagwell could rotate between those activities every day. *See Holbrook*, 112 F.3d at 1528.

9

While Bagwell asserted that several of the functions requiring the most significant accommodations for her disability, such as construction work, were rarely performed, Bagwell and the County agreed that the most problematic functions were those performed regularly. For example, Bagwell did not dispute that repeated actions led to swelling or pain in her knee, and that a significant part of her job involved cleaning bathrooms, picking up trash and tree limbs, and traversing the park daily—all repetitive actions. On some days, Bagwell may have been able to clean the park's bathrooms and pick up trash, conducting all of the maintenance and functions of the job. However, on a different day, the stamina and endurance issues with Bagwell's right leg could limit her ability to perform those same functions, as well as introduce additional safety issues on wet surfaces given her reduced ability to balance. Moreover, poor weather or other outdoor conditions outside the County's control could introduce additional issues exacerbating Bagwell's reduced balance. While some accommodations, such as an ATV and adaptive equipment, would reduce Bagwell's endurance and balance related deficits, the common, repetitive functions of the groundskeeper position could not be accommodated.

Finally, groundskeeping staff could be presented with a novel maintenance issue that Bagwell could not perform at all. In such a situation, the County would be forced to make a significant accommodation, requiring a co-groundskeeper or

hiring a third-party service to complete the work.  These accommodations are unreasonable because the groundskeeper position exists to perform such work, and the accommodation would undermine the reason for the position's existence.  *See Holbrook*, 112 F.3d at 1528.

Thus, the district court did not err by granting summary judgment in favor of the County on Bagwell's reasonable accommodation claim, as Bagwell failed to articulate a *prima facie* case of disability discrimination.  Additionally, Bagwell did not establish that she was a "qualified individual" because she did not show that she could perform the "essential functions" of the groundskeeper position at West Park with or without a "reasonable accommodation."

## II. "Regarded-as" Disabled Claim

Bagwell also contends that the district court erred by granting summary judgment in favor of the County on her "regarded-as" disabled claim.  She asserts that her supervisor improperly regarded her as disabled, such that her termination was discriminatory.

Similar to the framework for evaluating a claim based on an actual disability, to succeed on a perceived disability claim, a plaintiff must show that (1) the employer regarded her as having a disability; (2) she was "qualified"; and (3) she was discriminated against because of her perceived disability.  *Sutton v. Lader*, 185 F.3d 1203, 1207-08 (11th Cir. 1999).

11

Here, the district court did not err in concluding that Bagwell failed to make a *prima facie* claim of "regarded-as" discrimination.  The district court correctly found that Bagwell was not a "qualified individual," such that she could not recover regardless of whether her supervisor perceived her to be disabled.

## III. Retaliation Claim

Lastly, Bagwell argues that the district court erred by granting summary judgment in favor of the County on her retaliation claim.  Bagwell asserts that she could establish discriminatory retaliation because she was terminated merely a day after requesting a reasonable accommodation.

To establish a *prima facie* case of discriminatory retaliation under the ADA, a plaintiff must show that: (1) she participated in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the plaintiff's participation in the protected activity and the adverse employment action.  *See Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).

Bagwell failed to show evidence of a causal connection between the protected activity—her request for accommodation—and the adverse employment action.  The County began termination proceedings prior to Bagwell's request for accommodation at her termination hearing.  Bagwell's argument that the

termination was in anticipation of a request for accommodation is speculative and unsupported by any evidence in the record.

The district court did not err by granting summary judgment in favor of the County on Bagwell's retaliation claim. Bagwell did not demonstrate that she was a "qualified individual" under the ADA and the Rehabilitation Act because she failed to demonstrate the existence of a reasonable accommodation that would allow her to perform the "essential functions" of her job as groundskeeper. Furthermore, Bagwell failed to show evidence of a causal connection between her request for an accommodation, the protected activity, and the adverse employment action, because the County began termination proceedings prior to Bagwell's request for an accommodation and Bagwell showed no evidence that such termination anticipated a request for accommodation.

**AFFIRMED.**