[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13883
Non-Argument Calendar
_____

D.C. Docket No. 0:15-cv-60248-KMM


J.A.M.,

Plaintiff-Appellant,


versus


NOVA SOUTHEASTERN UNIVERSITY, INC.,
a Florida not-for-profit corporation,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 6, 2016)

Before TJOFLAT, HULL, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff J.A.M. appeals the district court's order granting Defendant Nova Southeastern University, Inc.'s ("Nova") motion to dismiss the amended complaint for failure to state a claim. After review, we affirm.

## I.  BACKGROUND

### A.    Facts[1]

In the fall of 2010, J.A.M. enrolled at Nova's College of Osteopathic Medicine and successfully completed his first semester. In April 2011, J.A.M. experienced a recurrence of his major depressive disorder. During that episode, J.A.M. heavily consumed alcohol for a week and eventually checked into a hospital for inpatient psychiatric stabilization. Nova granted J.A.M. retroactive medical leave and, following the episode, J.A.M. returned to school and successfully resumed his studies.

Nova's Associate Dean for Student Affairs referred J.A.M. to a student assistance program, which required him to sign a "one-size-fits-all agreement calling for random drug tests and abstinence from alcohol." In the fall of 2011, J.A.M. experienced a recurrence of his major depressive disorder, which caused

---

[1]We recount the facts from the allegations in the amended complaint, which we accept as true and construe in the light most favorable to the plaintiff. Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012).

him to fail many classes and binge drink.  During this second episode, J.A.M. spent six days in a psychiatric hospital.  Following his release from the hospital, Nova informed J.A.M. that he would have to take a leave of absence and obtain the approval of the Student Progress Committee to resume his studies.  J.A.M. took a seven-month leave of absence, reenrolled in the fall of 2012, and passed all classes he had previously failed.

In November 2012, J.A.M. suffered a third depressive episode that involved drinking and was twice hospitalized for inpatient psychiatric stabilization.  During the December 2012 winter break, J.A.M. checked himself into a dual-diagnoses treatment program.  In January 2013, he resumed his classes.  In April 2013, J.A.M. suffered a fourth depressive episode and was hospitalized for "alcohol-involved psychiatric stabilization."  In sum, from 2011 to 2014, J.A.M. was unable to complete a single full semester of medical school without suffering a relapse of his major depressive disorder during the semester.

Nova discovered that J.A.M.'s fourth depressive episode involved alcohol and told him that he would need to take another medical leave of absence.  Nova also told him that the Student Progress Committee would have to approve his readmission.  During his third medical leave of absence, J.A.M. underwent a partial-hospitalization program for 45 days and then moved into a transitional

living facility for two months of intensive outpatient therapy and another month of normal outpatient therapy.

At the end of 2013, Nova's Chair of the Department of Psychiatry examined J.A.M. and cleared him to return to school, with monitoring. Notwithstanding this clearance, Nova required J.A.M. to appear before the Student Progress Committee, whose members questioned him about whether he had breached his substance abuse and alcohol agreement. In response to the committee's inquiries, J.A.M. explained that he had never been to class intoxicated, had never seen a patient while intoxicated, and had never been in any sort of conflict with faculty, staff, or other students. The committee voted to dismiss J.A.M. from Nova because all four of his depressive episodes "involved alcohol." The committee's recommendation was accepted by the dean and affirmed by Nova's internal appeals process.

## B.    Procedural History

On April 10, 2015, J.A.M. filed a counseled, two-count amended complaint (the "complaint") in federal district court against Nova, alleging (1) disability discrimination under Section 504 of the Rehabilitation Act ("RA"), 29 U.S.C. § 794(a) (Count I), and (2) disability discrimination under Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12182(a) (Count II). J.A.M. alleged that Nova excluded him from participation in the College of Osteopathic Medicine due to his mental illness and, therefore, "discriminated

against him solely by reason of his disability," in violation of the RA. J.A.M. further alleged that Nova "dismissed him . . . in reliance on his being mentally disabled," in violation of the ADA.

On April 16, 2015, Nova filed a motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In an August 12, 2015 order, the district court granted Nova's motion and dismissed the complaint. J.A.M. appealed.

## II. DISCUSSION

### A. Standard of Review

We review de novo the district court's grant of a Rule 12(b)(6) motion to dismiss for failure to state a claim. Cinotto v. Delta Air Lines Inc., 674 F.3d 1285, 1291 (11th Cir. 2012). When evaluating a motion to dismiss, a court looks to see whether the complaint contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Surtain v. Hamlin Terrace Found., 789 F.3d 1239, 1245 (11th Cir. 2015). This plausibility standard is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. "A pleading that offers a formulaic recitation of elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quotation marks omitted). "[C]onclusory allegations, unwarranted deductions of fact or legal

5

conclusions masquerading as facts will not prevent dismissal." Oxford Asset

Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

## B.    ADA Title III Claim

Title III of the ADA sets forth a general rule against disability-based

discrimination in public accommodations[2]:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a) (emphasis added).  Title III also sets forth a statutory

definition of "discrimination," which includes, inter alia:

> (i)   the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
>
> (ii)   a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

---

[2]A "public accommodation" includes a "postgraduate private school."  42 U.S.C. § 12181(7)(J).

(iii)   a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, <u>unless</u> the entity can demonstrate that taking such steps would <u>fundamentally alter</u> the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden; . . .

<u>Id.</u> § 12182(b)(2)(A)(i-iii) (emphasis added).

The definition of discrimination provided in Title III covers both tangible barriers, that is, physical and architectural barriers that would prevent a disabled person from entering an accommodation's facilities and accessing its goods, services and privileges, and intangible barriers, such as discriminatory policies and procedures that restrict a disabled person's ability to enjoy the defendant entity's goods, services and privileges.  <u>Rendon v. Valleycrest Prods.</u>, 294 F.3d 1279, 1283-84 (11th Cir. 2002).

Here, J.A.M. failed to state a claim under Title III of ADA.  For starters, J.A.M. did not plead facts demonstrating that Nova's actions constituted "discrimination" under Title III.  Nova's actions do not fall under Title III's first definition of discrimination.  While Nova's mandatory substance abuse and alcohol agreement may constitute a readmission criterion that tends to "screen out" certain individuals with chronic alcohol-related problems, there is no allegation that this criterion was not "necessary for the provision of the . . . services . . . being offered" by Nova.  42 U.S.C. § 12182(b)(2)(A)(i).  It is axiomatic that a medical student

with alcohol problems would have to abstain from alcohol in order to complete his studies. Nova placed alcohol-related conditions on J.A.M. that were necessary to facilitate the successful completion of his coursework.

Nor do Nova's actions fall under Title III's second and third definitions of discrimination. While J.A.M. argues that Nova failed to make "reasonable modifications" or "take . . . steps . . . to ensure that no individual with a disability is excluded" (an already specious claim), there is no allegation that making these accommodations would not "fundamentally alter" the nature of the services provided by Nova. 42 U.S.C. § 12182(b)(2)(A)(ii-iii). Again, it is self-evident that J.A.M.'s requested accommodations—repeated medical leaves of absence for extended amounts of time, exam rescheduling, and excusal of misconduct—would fundamentally alter his course of study and the skills learned therein. Nova was under no obligation to provide accommodations that would fundamentally alter the nature of its osteopathic medicine program. In fact, the Supreme Court has repeatedly admonished courts to respect the academic judgment of universities. See, e.g., Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 225, 106 S. Ct. 507, 513 (1985) ("When judges are asked to review the substance of a genuinely academic decision . . . they should show great respect for the faculty's professional judgment."); Bd. of Curators of the Univ. of Mo. v. Horowitz, 435 U.S. 78, 90, 98 S. Ct. 948, 955 (1978) ("[T]he determination whether to dismiss a student for

8

academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decisionmaking.").  Accordingly, Nova's actions did not constitute "discrimination" under Title III.

In any event, assuming arguendo that Nova "discriminated against" J.A.M. and inhibited his "full and equal enjoyment of the . . . services . . . of [Nova]" by requiring him to sign a substance abuse agreement and later dismissing him, the complaint contains no allegation that Nova discriminated "on the basis of [J.A.M.'s] disability."  See 42 U.S.C. § 12182(a).  J.A.M. alleged that his major depressive disorder constituted a mental disability.  But J.A.M. did not allege that he was dismissed because of his mental disability.  Rather, he alleged that he was dismissed because he breached his agreement to abstain from alcohol consumption. At best, Nova discriminated on the basis of J.A.M.'s alcohol-related behavioral misconduct, not his disability.  As such, J.A.M. failed to allege that Nova discriminated against him on account of his disability and, therefore, failed to state a claim under Title III.

J.A.M.'s argument that the substance abuse and alcohol agreement was a pretext for disability discrimination is without merit.  Nova is not required to excuse past misconduct, even if that misconduct is linked to a student's mental disability.  See Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 465 (4th

Cir. 2012) ("[M]isconduct—even misconduct related to a disability—is not itself a disability and may be a basis for dismissal.") (quotation marks omitted). J.A.M. breached the substance abuse and alcohol agreement on at least three separate occasions. His mental disability does not excuse his misconduct.

## C.    Rehabilitation Act Claim

The Rehabilitation Act provides the following protection for persons facing a disability:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a) (emphasis added). Discrimination claims under the RA are governed by the same standards used in ADA cases. Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000). In order to establish a prima facie case of discrimination under the RA or ADA, the plaintiff must demonstrate that he (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of his disability. See id.

An "otherwise qualified" person is one who is able to meet all of a program's requirements in spite of his handicap. Onishea v. Hopper, 171 F.3d 1289, 1300 (11th Cir. 1999). In the context of postsecondary education, an "otherwise qualified" individual must be able to meet the academic and technical

10

standards requisite to admission or participation in the education program or activity, in spite of his handicap.  See id.; 34 C.F.R. § 104.3(l)(3).

In certain circumstances, an educational institution's refusal to accommodate the needs of a disabled person amounts to discrimination against that person because of his disability.  See Se. Cmty. Coll. v. Davis, 442 U.S. 397, 412-13, 99 S. Ct. 2361, 2370 (1979).  However, "[the RA] imposes no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped person."  Id. at 413, 99 S. Ct. at 2370-71.  Where the purpose of an educational program is to train persons to serve their profession in all customary ways, an institution's refusal to make "major adjustments" to its program in order to accommodate the disabled does not amount to disability-related discrimination.  Id. at 413, 99 S. Ct. at 2370.

Here, J.A.M.'s RA claim fails for several reasons.  First, J.A.M. did not allege facts demonstrating that Nova dismissed him "solely by reason of . . . his disability."  See 29 U.S.C. § 794(a).  As discussed above, Nova dismissed him due to his breach of the substance abuse and alcohol agreement, not due to his mental disability.  J.A.M. alleged no other facts suggesting that Nova dismissed him because of his mental disability, let alone that his mental disability was the sole reason for dismissal.

Second, the allegations in the complaint affirmatively demonstrate that J.A.M. is not an "otherwise qualified individual" under the RA.  See id.  His mental disability renders him wholly unable to participate in Nova's osteopathic medicine program.  From 2011 to 2014, he was unable to complete a single full semester of medical school without suffering a relapse of his major depressive disorder during the semester.  These depressive episodes caused him to abuse alcohol, fail classes, and withdraw from his studies.  His disability caused at least five hospitalizations for psychiatric stabilization in the course of two years.  Even after multiple leaves of absence, one lasting as long as seven months, and intensive outpatient treatment, he repeatedly relapsed and failed to meet Nova's academic requirements.  It is clear that J.A.M.'s disability renders him incapable of meeting the academic and technical standards required to participate in Nova's osteopathic medicine program.  As such, he is not an "otherwise qualified individual" and cannot state a claim under the RA.  See Onishea, 171 F.3d at 1300; 34 C.F.R. § 104.3(l)(3).

Finally, the allegations in the complaint do not establish that Nova refused to accommodate J.A.M.'s needs in a way that amounted to disability discrimination. Nova gave J.A.M. multiple opportunities to complete his coursework in spite of his mental disability.  Nova allowed him to take two medical leaves of absence, retake examinations, and even referred him to professionals for treatment.  It was not until

J.A.M.'s fourth depressive episode in three years that Nova determined that dismissal was appropriate.  As if it had not done so already, Nova would have needed to make "major adjustments" to its osteopathic medicine program to continue accommodating J.A.M.  See Davis, 442 U.S. at 413, 99 S. Ct. at 2370. The RA imposes no such obligation and, therefore, Nova did not discriminate against J.A.M. because of his disability.

## III.  CONCLUSION

In light of the foregoing, we affirm the district court's order dismissing Plaintiff J.A.M.'s amended complaint.

**AFFIRMED.**