[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-13494
_____

D.C. Docket No. 8:14-cv-02131-CEH-UAM

LISA CAPORICCI,

                                        Plaintiff-Appellant,

versus

CHIPOTLE MEXICAN GRILL, INC.,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(April 5, 2018)

Before MARCUS, MARTIN, and NEWSOM, Circuit Judges.

PER CURIAM:

Lisa Caporicci appeals the district court's grant of summary judgment in favor of her former employer, Chipotle Mexican Grill, Inc.  She sued Chipotle, making claims that it discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112(a), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.10(1)(a).  After careful review, and with the benefit of oral argument, we affirm.

## I.  BACKGROUND

Caporicci was diagnosed with bipolar disorder when she was eighteen years old.  When not on medication to treat the disorder, she suffers from "[m]ania and depression."  In July 2012, Caporicci began working for Chipotle as a crew member at Chipotle's South Tampa location.  The general manager of that location was Jared Miesel.  In April 2013, a few months after Miesel became general manager, Caporicci told him she had bipolar disorder and "was on medication" for it.  Caporicci testified that his reaction was "[n]eutral" and he said "okay."  She didn't tell him what medication she was on, whether there were any side effects, or whether it could interfere with her work.  According to Caporicci, Miesel treated all employees the same, and he never reprimanded her.

On May 30, 2013, Caporicci saw Sandra Weeks, the nurse practitioner who treated her bipolar disorder.  Caporicci complained of not being able to eat or sleep and having frequent panic attacks, including while she was at work.  To control

2

these symptoms, Nurse Practitioner Weeks modified Caporicci's treatment, taking her off of one medication and starting her on a new one named Saphris. Caporicci started taking Saphris that day. Nurse Practitioner Weeks's treatment notes from the May 30th visit recommended that Caporicci take FMLA leave until Monday, June 3.

That same day, Nurse Practitioner Weeks faxed a letter to Miesel requesting FMLA leave for Caporicci. The letter said:

> This is to verify our telephone conversation earlier today regarding Ms. Caporicci needing to take FMLA today through Monday, June 6,[1] secondary to severe panic attacks. At this time, her medication is being titrated, and I hope that she will not need further medical leave. I expect that a brief period of time for respite, along with changes in her medication will be sufficient.

According to Caporicci, when Miesel took the fax out of the printer, he didn't read it, laughed, crumpled it up, and threw it out. Caporicci then talked to Miesel about taking some time off because of her condition. Miesel gave her five days off work: from May 30th to June 3rd.

During her time off work, Caporicci adjusted to her new medication. She said it made her feel "a little tired" and " knock[ed] [her] out at night." Caporicci went back to work on June 4th. On June 4th, 5th, and 6th, Caporicci felt "tired, slow[,] and groggy," but was able to work without incident.

---

[1] The requested date in the letter—"Monday, June 6"—may have been an error, as June 6, 2013 was a Thursday, not a Monday. Nurse Practitioner Weeks's treatment notes recommended leave through Monday, June 3.

3

June 7, 2013 was Caporicci's last day at Chipotle. She clocked in around 11:50 a.m. Around thirty minutes into her shift, she started to feel "dizzy and disoriented." She began "having issues serving customers." Caporicci acknowledges she was "very slow, messed up orders, and was incoherent." When her coworkers asked her what was wrong, she told them her new medication was "messing with [her] right now."

Miesel noticed Caporicci's condition, took her off the line and sent her home. Caporicci agreed that taking her off the line and sending her home were appropriate. Caporicci testified that she "tried to explain to [Miesel] what was going on," and he told her "it's fine" and that she should "go home and get some rest."

After Caporicci was home, she had two phone conversations with Miesel. In the first call, Miesel "seem[ed] more empathetic." Caporicci told him she was on medication and that she believed her behavior was a side effect of her medication. According to Caporicci, although Miesel listened and seemed to want to offer her a second chance, he called back ten minutes later and told her, "I'm really sorry, but you just looked like you were on some shit, so you're fired and you are not rehirable at Chipotle."

After the termination, Miesel sent an email to Chipotle Headquarters explaining his decision to fire Caporicci. The email said:

4

The final incident was the employee arriving late to work and appeared to be under the influence of some kind of medication. I had face to face talks with her regarding performance previously, but with a zero tolerance for inebriation of any kind there had been no prior incident.

It came to my attention during peak hour when she attempted to roll a burrito and basically flipped it upside down releasing the contents into a foil, she then placed the foil and tortilla (still upside down) into a bowl and slid it to the expeditor. I calmly sent her home since making a scene in front of a peak hour line of customers would have been a terrible idea. I then called and terminated her later in the afternoon.

Chipotle's employee handbook includes a Drug and Alcohol Policy, which

provides, in relevant part:

> No employee shall report to work or be at work under the influence of alcohol, drugs, or controlled substances, or with any detectable amount of alcohol, drugs, or controlled substances in his or her system.
>
> Employees who must use medically prescribed or over-the-counter drugs that may adversely affect their ability to perform work in a safe manner must notify their Manager prior to starting work. The Manager will decide if the employee can remain at work and/or if work restrictions are necessary. The employee may be required to take a medical leave of absence or disability leave for the duration of the medication.
> . . .
> Any violation of this policy may result in disciplinary action, up to and including termination.

In sum, this policy contains two parts: first, it prohibits workplace intoxication

from any drug; second, it requires that employees notify their manager if they take

a prescription drug that "may adversely affect their ability to perform work in a

safe manner."

5

Caporicci acknowledged in her deposition that "[m]e being intoxicated" was the given reason why she was fired. She also agreed that "it is appropriate to terminate people if they come to work intoxicated."

On June 17, 2013, Caporicci filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued a right-to-sue letter, finding that "the evidence obtained during the investigation establishes that there is reasonable cause to believe that Respondent terminated Charging Party due to her disability in violation of the [ADA]."

In August 2014, Caporicci filed this suit against Chipotle. She alleged that Chipotle discriminated against her "because of her disability," in violation of the ADA and the FCRA.[2] After discovery was complete, Chipotle moved for summary judgment. The district court found that "[w]hile Plaintiff may well have been fired because of conduct related to medication side effects, that fact is not sufficient to demonstrate disparate treatment based on Plaintiff's disability." The court therefore granted summary judgment in favor of Chipotle on Caporicci's claims under the ADA and FCRA. Caporicci appealed.

---

[2] Caporicci also alleged interference and retaliation claims under the Family Medical Leave Act of 1996, 29 U.S.C. § 2615, but she does not challenge on appeal the district court's grant of summary judgment to Chipotle on those claims.

6

## II.  LEGAL STANDARD

We review de novo the district court's grant of summary judgment, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party.  Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008).  Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

## III.  ANALYSIS

Under the ADA, covered employers may not "discriminate against a qualified individual on the basis of disability."  42 U.S.C. § 12112(a); see generally Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th Cir. 1999).  Claims brought under FCRA (the Florida analog to the ADA) are analyzed using the same framework as claims under the ADA.  Holly v. Clairson Indus., L.L.C., 492 F.3d 1247, 1255 (11th Cir. 2007).

We analyze disparate-treatment claims under the ADA using the McDonnell Douglas[3] burden-shifting framework.  See Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam).  Under that framework, the plaintiff has the initial burden of establishing a prima facie case of disability discrimination.  Cleveland v. Home Shopping Network, Inc., 369 F.3d 1189, 1193 (11th Cir. 2004).

---

[3] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973).

To establish a prima facie case, the plaintiff must show "(1) a disability, (2) that she was otherwise qualified to perform the job, and (3) that she was discriminated against based upon the disability." Id. If the plaintiff establishes a prima facie case, the burden shifts to the defendant "to articulate a legitimate, non-discriminatory reason" for terminating the plaintiff. Id. Once the defendant proffers a legitimate, nondiscriminatory reason for its adverse action, the burden swings back to the plaintiff to prove that the employer's explanation is pretextual and that its true motive was the plaintiff's disability. Id.

Chipotle does not dispute that Caporicci is disabled, nor does it dispute that she was a qualified individual. Thus, Caporicci has satisfied the first two elements of the prima facie case. However, Caporicci's claim fails because she cannot show she was terminated because of her disability and—even if she could—she cannot demonstrate that Chipotle's nondiscriminatory explanation is pretext.

Caporicci admitted that Miesel's stated reason for terminating her was that she was "intoxicated" at work. And she does not dispute that she was in fact intoxicated on Saphris on the day she was fired. She conceded that because of the Saphris, she became "very slow, messed up orders, and was incoherent." Further, she agreed that "it is appropriate to terminate people if they come to work intoxicated." Based on these admissions, she did not dispute in the district court that she violated the provision of Chipotle's Drug and Alcohol Policy that prohibits

8

employees from being "at work under the influence of alcohol, drugs, or controlled substances."

The district court found that Chipotle had fired Caporicci because she violated this neutral, generally applicable rule, meaning her firing was not disability-related. Whether a firing based on disability-related intoxication constitutes disability-based discrimination under the ADA is an open question in this circuit[4] and one on which other circuits are split.[5] However, Caporicci did not raise this issue in her brief.[6] Therefore that issue is considered abandoned on appeal. See Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (per curiam) ("[I]ssues not briefed on appeal . . . are deemed abandoned.").

---

[4] There is an unpublished Eleventh Circuit opinion that refuses allowance for disability-related intoxication. In J.A.M. v. Nova Se. Univ., Inc., 646 F. App'x 921 (11th Cir. 2016) (per curiam), the plaintiff, a medical student, suffered from major depressive disorder, a mental disability. Id. at 923, 926. His depression caused him to abuse alcohol. Id. at 923. The plaintiff's medical school expelled him for "breach[ing] his agreement to abstain from alcohol consumption." Id. at 926. This Court held that, on those facts, the plaintiff failed to state a claim for disability discrimination under the ADA. Id.

[5] The Fourth Circuit has held that "misconduct—even misconduct related to a disability—is not itself a disability and may be a basis for dismissal." Halpern v. Wake Forest Univ. Health Scis., 669 F.3d 454, 465 (4th Cir. 2012) (quotation omitted); see also J.A.M., 646 F. App'x at 926 (citing Halpern). On the other hand, the Ninth Circuit has held that "conduct resulting from a disability is considered to be part of the disability, rather than a separate basis for termination." Dark v. Curry Cty., 451 F.3d 1078, 1084 (9th Cir. 2006) (quotation omitted).

[6] Caporicci referenced this argument in a single sentence on the last page of argument in her brief. Such a fleeting reference is not sufficient to raise the issue to this court. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

Instead, Caporicci's argument is based on the second part of Chipotle's Drug and Alcohol Policy, which requires employees to notify their manager "prior to starting work" if they take a prescription drug that "may adversely affect their ability to perform work in a safe manner." Ms. Caporicci asserts she didn't actually violate this provision, thus establishing the third prong of her prima facie case and showing a pretext for discrimination.[7]

This argument is unavailing. Miesel told Caporicci that she was fired for "being intoxicated" at work. Miesel did not say anything to her about violating the notification provision. Neither did he mention the notification requirement in his email to Chipotle Headquarters explaining his decision to fire her. Rather, he said he fired her because she was "under the influence of some kind of medication," causing her to mess up an order during "peak hour." He also invoked the company's "zero tolerance for inebriation of any kind."

Caporicci violated the policy's prohibition on workplace intoxication, and this violation was Chipotle's stated reason for firing her.[8] "A plaintiff is not

---

[7] Where a plaintiff was fired for violating a company rule, she can satisfy both the third prong of the prima facie case and the pretext prong by showing she did not violate the rule the employer claims she violated. See Jones v. Gerwens, 874 F.2d 1534, 1540 (11th Cir. 1989) (explaining that in cases involving discipline for violation of work rules, the plaintiff can establish the prima facie case by showing she "did not violate the work rule"); Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1363 (11th Cir. 1999) ("[T]he 'work rule' defense is arguably pretextual when a plaintiff submits evidence [] that she did not violate the cited work rule.").

[8] At oral argument Caporicci suggested the notification provision must be read in conjunction with the workplace intoxication provisions. However, Caporicci never raised this

10

allowed to recast an employer's proffered nondiscriminatory reasons . . . .

Provided that the proffered reason is one that might motivate a reasonable

employer, [the] employee must meet that reason head on and rebut it . . . ."

Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

Caporicci has failed to do so.

    **AFFIRMED.**

---

argument to the district court.  In her response to Chipotle's motion for summary judgment, Caporicci only mentioned the notice requirement in support of her argument that Miesel "failed to ascertain whether [she] was under the influence of illegal drugs" before firing her.  She did not put forward her preferred reading of Chiptole's policies, nor did she argue that her compliance with the notification provision rendered Chipotle's stated reason for her firing pretextual. Therefore, she cannot now raise that argument on appeal.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court." (quotation omitted)).