[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 25, 2001
THOMAS K. KAHN
CLERK

_____

No. 01-10371

_____

D. C. Docket No. 99-01748-CV-N-S

DANIEL WAYNE WRIGHT,
individually and as Administrator
for the Estate of Donna G. Wright,

Plaintiff-Appellee,

versus

HANNA STEEL CORPORATION,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
for the Northern District of Alabama

_____

(October 25, 2001)

Before BIRCH, COX and ALARCÓN*, Circuit Judges.

ALARCÓN, Circuit Judge:

_____

*Honorable Arthur L. Alarcón, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

Defendant-Appellant Hanna Steel Corporation (Hanna Steel) appeals from the district court's award of penalties and attorney's[1] fees to Plaintiff-Appellee Daniel Wayne Wright (Mr. Wright), his wife, Donna C. Wright, and their two minor children in this ERISA action.[2] The district court determined that Hanna Steel was required to pay for a period of 18 months, penalties of $75.00 per day for Mr. Wright, the same amount for his wife, and $10.00 per day for each of the children, for a total of $93,075.00. The district court also awarded Mr. Wright $24,025.00 in attorney's fees. Hanna Steel contends that the district court's award of $75.00 per day to Mr. Wright was excessive. It also maintains that the district court erred as a matter of law in awarding a penalty for Mrs. Wright and the children pursuant to 29 U.S.C. § 1132(c)(1). Hanna Steel further asserts that the district court abused its discretion in awarding attorney's fees to Mr. Wright.

We conclude that the district court erred in ordering Hanna Steel to pay penalties to Mrs. Wright and the children. We reject Hanna Steel's contention that the district court abused its discretion in its attorney's fees award.

---

[1]     There is no consistency among federal statutes, rules, and cases with respect to using the term "attorney fees," "attorneys fees," "attorney's fees," or "attorneys' fees." We note, however, that the Supreme Court Style Manual prefers the use of the phrase "attorney's fees" in all opinions. *See Stallworth v. Greater Cleveland Reg'l Transit Auth.*, 105 F.3d 252, 253 n.1 (6th Cir. 1997). Therefore, we will use the term "attorney's fees" in this opinion except when quoting other authorities.

[2]     Mr. Wright filed this action on his own behalf and on behalf of his wife Donna G. Wright's (Mrs. Wright's) estate. He did not, however, name his children as parties to this action.

## I

The parties do not dispute the pertinent factual background of this dispute. Mr. Wright was employed by Hanna Steel from August 6, 1992 until December 31, 1996. In December 1996, Mr. Wright, his wife, and their two minor children were enrolled in Hanna Steel's self-insured group health plan. Hanna Steel was the plan administrator for the health plan. Claims under the plan were turned over to Blue Cross Blue Shield of Alabama. Mr. Wright worked at Hanna Steel's Northport plant in Tuscaloosa, Alabama. Ms. Connie Scott, a Hanna Steel employee, provided him and the other employees the information and application for enrollment in the plan during 1996 and 1997.

Mr. Wright voluntarily terminated his employment with Hanna Steel on December 31, 1996. Hanna Steel was solely responsible for entering employees' eligibility data on the Blue Cross computer system. It did not cancel Mr. Wright's group health insurance when he stopped work. The information Hanna Steel entered in its database erroneously reflected that Mr. Wright was employed from 1996 until June 2, 1998. In fact, Mr. Wright began working for Alabama Windshield on January 1, 1997. Hanna Steel never supplied Mr. Wright, Mrs. Wright, or their children with a specific notice of rights, obligations, and premium costs for

3

continuation coverage[3] under the Hanna Steel health plan. *See* 29 U.S.C. §§ 1161-1168 (Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA)).[4]

On January 3, 1997, Mr. Wright completed an application to transfer his family's health insurance to the Glass Doctor health insurance plan, which covered Alabama Windshield employees. Claims under the Glass Doctor health plan, like claims under the Hanna Steel plan, were turned over to Blue Cross. Sarah Dickinson, the Glass Doctor's employee benefits representative, contacted Blue Cross about placing Mr. Wright and his family on the Glass Doctor plan and faxed Mr. Wright's application to Blue Cross. Blue Cross, however, declined the request

---

[3]     Pursuant to 29 U.S.C. § 1162:
'continuation coverage' means coverage under the plan which meets the following requirements:
        (1) Type of benefit coverage
        The coverage must consist of coverage which, as of the time the coverage is being provided, is identical to the coverage provided under the plan to similarly situated beneficiaries under the plan with respect to whom a qualifying event has not occurred. If coverage is modified under the plan for any group of similarly situated beneficiaries, such coverage shall also be modified in the same manner for all individuals who are qualified beneficiaries under the plan pursuant to this part in connection with such group.
        . . .
29 U.S.C. § 1162.

[4]     Section 1161(a) provides as follows:
        The plan sponsor of each group health plan shall provide, in accordance with this part, that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.
29 U.S.C. § 1161(a).

to place Mr. Wright and his family on the Glass Doctor plan because their records indicated he continued to be covered by the Hanna Steel plan.

Mr. Wright testified that when he picked up his last check from Hanna Steel, he spoke with Ms. Scott about the coverage date for his insurance and she told him that it would have ended on his last day of work. In January or February 1997, he asked her to investigate the circumstances preventing his enrollment in the Glass Doctor plan. She assured Mr. Wright that she would investigate, but never got back to him.

In a letter to Hanna Steel on March 23, 1997, Mrs. Wright explained that Mr. Wright was trying to enroll in Alabama Windshield's health insurance plan. She advised Hanna Steel that her husband was no longer employed by Hanna Steel. She explained that Blue Cross had informed Mr. Wright that he and his family continued to have coverage under the Hanna Steel plan. Mrs. Wright requested that Hanna Steel reply after checking its records. Hanna Steel employees testified that they reviewed Hanna Steel's files and found no correspondence from Mrs. Wright.

Mr. Wright worked for Alabama Windshield until October 26, 1997. He then went to work for Johnson Controls. In November 1997, Mrs. Wright was diagnosed with Hodgkin's disease. Following this diagnosis, Mr. and Mrs. Wright met with a social worker at the medical clinic. The Wrights explained their insurance coverage

5

concerns to the social worker. The social worker immediately telephoned Blue Cross. Blue Cross confirmed that the Wrights were covered. Between December 1997 and June 1998, Mrs. Wright received thousands of dollars worth of medical care for cancer treatment, but Blue Cross denied her claims for payment to her providers.

Mr. Wright returned to work for Alabama Windshield in February 1998. He continued working for that company until August 31, 1998. When Mr. Wright returned to Alabama Windshield, he again sought to enroll in its health insurance plan through the Glass Doctor. Mr. Wright was unable to enroll in the Glass Doctor health plan until July 1, 1998.

Blue Cross's records reflect that on May 7, 1998, Ms. Scott inquired about Mr. Wright's insurance coverage. On June 2, 1998, Hanna Steel informed Blue Cross that Mr. Wright's employment had terminated on January 1, 1996. That date was incorrect. Mr. Wright's employment with Hanna Steel had ended on December 31, 1996. The incorrect entry caused Blue Cross to terminate Mr. Wright's health insurance coverage retroactive to January 1, 1996, thereby creating a gap in coverage from January 1, 1996 through July 1, 1998, the date of Mr. Wright's enrollment in the Glass Doctor health plan. The incorrect entry also caused Blue Cross to consider Mrs. Wright's cancer a pre-existing condition under the Glass

6

Doctor health plan. As a result, Blue Cross refused to pay any claims related to her cancer.

The Wrights retained counsel in late July 1998. In October 1998, their counsel notified Hanna Steel that the Wrights had unpaid health insurance claims. Hanna Steel, after discussions with the Wrights' counsel, changed the cancellation date of the Wrights' health plan to June 30, 1998 and paid the Wright family's insurance claims from 1997 through June 30, 1998. Mr. Wright paid no premiums for the health insurance coverage he and his family received during that time period.

Mr. Wright filed his complaint in this action on July 8, 1999. He alleged procedural violations of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.[5] He requested that the district court award him statutory penalties under ERISA and attorney's fees. On May 17, 2000, Mr. Wright filed a motion for summary judgment as to claims one and six.[6] Because of a

---

[5] In his first claim for relief, Mr. Wright sought damages and attorney's fees for Hanna Steel's and Blue Cross's alleged failures leading up to and including the wrongful denial of Mrs. Wright's medical claims. In his second claim, Mr. Wright sought punitive damages against Blue Cross for its alleged bad faith in refusing to pay Mrs. Wright's medical claims. In his third and fourth claims, against Blue Cross for breach of contract, he sought damages and attorney's fees. In his fifth claim, for fraud against Hanna Steel and Blue Cross, Mr. Wright sought punitive damages. Finally, in his sixth claim, Mr. Wright sought statutory penalties for each member of his family from Hanna Steel for its failure to notify Mr. Wright and his family about continuation coverage under COBRA.

[6] On May 17, 2000, Mr. Wright filed a motion to dismiss counts two through five of his complaint, which the district court granted by its order of June 20, 2000. On June 20, 2000, the district court dismissed the action against defendant Blue Cross in accordance with Mr.

procedural violation, the district court struck Mr. Wright's brief and evidentiary material filed in support of his motion. Mr. Wright refiled the materials along with another copy of his motion on May 24, 2000. Hanna Steel filed a cross motion for summary judgment on May 24, 2000.

The district court granted Mr. Wright's motion for summary judgment and denied Hanna Steel's cross motion. On August 31, 2001, it assessed civil penalties totaling $170.00 per day for a period of 18 months and awarded attorney's fees to Mr. Wright. The district court also allowed Hanna Steel an offset for the value of the insurance premiums it paid on behalf of Mr. Wright and his family between December 31, 1996 and July 1, 1998.

The district court's order set a briefing schedule and directed Mr. Wright to submit an itemized schedule stating the total sum due. On December 15, 2000, the district court entered judgment in favor of Mr. Wright in the amount of $115,509.92, consisting of $93,075.00 in penalties, $24,025.00 in attorney's fees, $583.78 in costs, and an offset of $2,173.86. Hanna Steel timely appeals from the district court's final judgment.

**II**

---

Wright and Blue Cross's earlier stipulation for dismissal of the claims against Blue Cross with prejudice.

This action arises under ERISA, 29 U.S.C. §§ 1001-1461. The district court had jurisdiction over the action pursuant to 29 U.S.C. § 1132(e) and 28 U.S.C. § 1331. We have jurisdiction over Hanna Steel's appeal from the final judgment pursuant to 28 U.S.C. § 1291.

## III

Hanna Steel contends that the district court erred in imposing separate penalties for Mr. Wright, his wife, and children. It also asserts that the award of $75.00 per day to Mr. Wright is excessive. In response, Mr. Wright contends that Hanna Steel forfeited its right to challenge the penalty awards because it failed to raise this issue before the district court. Alternatively, Mr. Wright maintains that the district court did not err in awarding penalties. We review civil penalties imposed under ERISA for abuse of discretion. *Daughtrey v. Honeywell, Inc.*, 3 F.3d 1488, 1494-95 (11th Cir. 1993). "[A] district court by definition abuses its discretion when it makes an error of law." *United States v. Pruitt*, 174 F.3d 1215, 1219 (11th Cir. 1999) (citation omitted).

We must first decide whether we may review the validity of the grant of separate penalties because Hanna Steel failed to present this question to the district court. An appellant is not precluded from presenting an issue for review on appeal where it "did not need to–indeed could not–raise a challenge to the [district court's]

9

authority . . . until the [district court] had performed the challenged act." *JCC, Inc. v. Commodity Futures Training Comm'n*, 63 F.3d 1557, 1565 (11th Cir. 1995). Hanna Steel argues that "[u]ntil the district court ruled, Hanna Steel simply did not perceive any possibility of penalties exceeding the statutory maximum." Mr. Wright clearly stated in his complaint, however, that he was seeking separate penalties with respect to each family member.[7] Accordingly, Hanna Steel could have contested the power of the district court to award separate penalties before it issued its final order.

"[A]ppellate courts generally will not consider an issue or theory that was not raised in the district court." *Narey v. Dean*, 32 F.3d 1521, 1526 (11th Cir. 1994) (quoting *FDIC v. Verex Assurance, Inc.*, 3 F.3d 391, 395 (11th Cir. 1993)). There are, however, exceptions to this rule:

> First, an appellate court will consider an issue not raised in the district court if it involves a pure question of law, and if refusal to consider it would result in a miscarriage of justice. Second, the rule may be relaxed where the appellant raises an objection to an order which he had no opportunity to raise at the district court level. Third, the rule does not bar consideration by the appellate court in the first instance where the interest of substantial justice is at stake. Fourth, a federal appellate court is justified in resolving an issue not passed on below . . . where the

---

[7] The complaint stated, *inter alia*, that "the Plaintiff demands judgment against the Defendant as follows: (a) For the Statutory Penalty of up to $100 a day *for each member of the Wright family* beginning January 1, 1997 and continuing until September 1, 1998." (emphasis added).

> proper resolution is beyond any doubt. Finally, it may be appropriate to consider an issue first raised on appeal if that issue presents significant questions of general impact or of great public concern.

*Id.* at 1526-27 (citing *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360-61 (11th Cir. 1984) (footnotes and citations omitted)). The construction and application of the statutes in this case involve pure questions of law. Our refusal to consider the separate penalties issue would result in a miscarriage of justice.[8] We therefore will exercise our discretion to consider the issue. *Id.* at 1527 (citing *United States v. Southern Fabricating Co.*, 764 F.2d 780, 781 (11th Cir. 1985) (observing that "[t]he decision whether to consider" an argument raised for the first time on appeal "is left to the appellate court's discretion")).

Under 29 U.S.C. § 1161(a):

> [t]he plan sponsor of each group health plan shall provide . . . that each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event is entitled, under the plan, to elect, within the election period, continuation coverage under the plan.

In the case at bar, Hanna Steel was the "plan sponsor" of a "group health plan."[9]

---

[8] A "miscarriage of justice" is a "[d]ecision or outcome of [a] legal proceeding that is prejudicial or inconsistent with [the] substantial rights of [a] party." *Black's Law Dictionary*, 999 (6th ed. 1990).

[9] "The term 'plan sponsor' means . . . the employer in the case of an employee benefit plan established or maintained by a single employer . . . ." 29 U.S.C. § 1002(16)(B).

Mr. Wright's decision to terminate his employment with Hanna Steel was a "qualifying event"[10] under the policy.

The notification provisions of COBRA provide that "(2) the employer of an employee under a plan must notify the administrator of a qualifying event . . . within 30 days . . . of the date of the qualifying event, . . . [and] (4) the administrator shall notify– (A) . . . any qualified beneficiary with respect to such event . . . ." 29 U.S.C. §§ 1166(a)(2), (4)(A). For purposes of § 1166(a)(4)(A), Mr. Wright, Mrs. Wright, and the two children were all "qualified beneficiaries."[11] Hanna Steel, as the plan administrator and the employer, could have satisfied the requirements of §§ 1166(a)(2) and 1166(a)(4)(A) by notifying Mr. Wright, his wife, or the children of the "qualifying event" under the policy and the resulting COBRA implications. *See*

---

"The term 'group health plan' means an employee welfare benefit plan providing medical care . . . to participants or beneficiaries directly or through insurance, reimbursement, or otherwise. . . ." 29 U.S.C. § 1167(1).

[10] "[T]he term 'qualifying event' means, with respect to any covered employee," *inter alia*, "[t]he termination . . . or reduction of hours, of the covered employee's employment." 29 U.S.C. § 1163(2).

[11] In general, "[t]he term 'qualified beneficiary' means, with respect to a covered employee under a group health plan, any other individual who, on the day before the qualifying event for that employee, is a beneficiary under the plan – (i) as the spouse of the covered employee, or (ii) as the dependent child of the employee." 29 U.S.C. § 1167(3)(A). In the case of a qualifying event described in section 1163(2) of this title (including termination other than for gross misconduct), however, "the term 'qualified beneficiary' includes the covered employee." *Id.* at § 1167(3)(B). Mr. Wright, therefore, in addition to being the plan participant, is also a qualified beneficiary.

29 U.S.C. § 1166(a)(4)(A) ("[T]he administrator shall notify – (A) . . . *any* qualified

beneficiary with respect to such event . . . ." (emphasis added)). The parties do not

dispute that Hanna Steel failed to comply with the notice requirements of

§ 1166(a)(4)(A).

Hanna Steel's failure under § 1166(a)(4)(A) to notify the Wrights of

continuation coverage meant that Mr. Wright was eligible for penalties pursuant to

29 U.S.C. § 1132 (c)(1):

> Any administrator (A) *who fails to meet the [notification] requirements of paragraph . . . (4) of section 1166 of this title . . . with respect to a participant*[12] *or beneficiary*, or (B) who fails or refuses to comply with a request for any information . . . *may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day* from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. For purposes of this paragraph, *each violation described in subparagraph (A) with respect to any single participant*, and each violation described in subparagraph (B) with respect to any single participant or beneficiary, *shall be treated as a separate violation*.

---

[12]  "The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C. 1002(7).

13

29 U.S.C. § 1132(c)(1) (emphasis added). Section 1132(c)(1), therefore, provides that where an administrator violates § 1166(a)(4) by failing to give notice, a district court may assess a penalty separately only as to any single *participant.* Here, the participant was Mr. Wright. The district court assessed a $75.00 per day penalty separately as to him. The district court also assessed separate penalties in favor of Mrs. Wright and the two children. They were beneficiaries under Hanna Steel's health plan. They were not participants. Pursuant to the plain language of 29 U.S.C. § 1132(c)(1), penalties for beneficiaries are not available where the plan administrator, following a "qualifying event" under the policy, fails to give notice of the right to continuation coverage.[13] Thus, the district court erred as a matter of law in awarding penalties for Mrs. Wright and the two children.

Under the circumstances of this case, we conclude that Hanna Steel has failed to demonstrate that the district court abused its discretion in determining that $75.00 per day was the appropriate penalty for Mr. Wright, pursuant to 29 U.S.C. § 1132(c)(1).

## IV

---

[13] By contrast, a penalty is available with respect to any single participant *or* beneficiary where an administrator fails to comply with a request for information that, by statute, the administrator must furnish to a participant or beneficiary. 29 U.S.C. § 1132(c)(1). No such failure was alleged in the instant case.

Hanna Steel also appeals from the district court's award of attorney's fees to Mr. Wright. Hanna Steel asserts that because the district court found Hanna Steel's actions were not in bad faith, it was error to award Mr. Wright attorney's fees. It also argues that fees are improper because Mr. Wright never sought to benefit anyone other than himself and, therefore, an award of fees is not necessary to deter Hanna Steel in the future. Finally, Hanna Steel maintains that the attorney's fees award is "inexplicable" because it includes pre-litigation and litigation attorney's fees. Awards of attorney's fees under ERISA are reviewed for abuse of discretion. *Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1121 (11th Cir. 1993).

Pursuant to 20 U.S.C. § 1132(g)(1), the court, in its discretion, "may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action." *Freeman*, 996 F.2d at 1119. This court has held that the following factors should be considered in determining whether to award attorney's fees:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan

15

or to resolve a significant legal question regarding ERISA itself; (5) [and] the relative merits of the parties' positions.

*Id.* (citing *McKnight v. Southern Life And Health Ins. Co.*, 758 F.2d 1566, 1571-72 (11th Cir. 1985) and *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980)).  "[N]o one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address . . . .  In particular types of cases, or in any individual case, however, other considerations may be relevant as well."  *Id.* (citations omitted).

The district court properly considered these factors.  With respect to the first factor, the court listed instances of Hanna Steel's culpable conduct, including its "carelessness in providing the Wright family with COBRA notices or lack thereof, . . . retroactively canceling their insurance without notifying them and inserting the wrong date for the cancellation."  The court also concluded, however, that  Hanna Steel's actions did not "rise to the level of bad faith" because there was "no evidence that these actions were done intentionally or maliciously."  Hanna Steel argues that in the absence of bad faith, attorney's fees must be denied as a matter of law.  We reject this argument.

Under the clear law of this circuit, a district court may consider "the degree of the opposing party's culpability *or* bad faith" when deciding whether to award fees.

16

*See Freeman*, 996 F.2d at 1119 (emphasis added); *see also Riley v. Administrator of the Supersaver 401K Capital Accumulation Plan*, 209 F.3d 780, 782 (5th Cir. 2000) (writing to correct any "mistaken belief . . . that alone the factor of culpability and bad faith somehow supplants the other . . . factors and conclusively determines the outcome of the attorneys' fees issue.") Moreover, neither the bad faith/culpability factor nor any other factor is necessarily decisive. The district court therefore did not err as a matter of law when it awarded attorney's fees based in part on Hanna Steel's culpable conduct. We find that the district court, in granting limited attorney's fees, carefully analyzed each of the relevant factors and its findings are supported by the record.

We similarly disagree with Hanna Steel's argument that the district court abused its discretion in awarding pre-litigation and litigation attorney's fees in this case. Hanna Steel presents no authority to support its contention that it was improper to award fees for both phases of the litigation. *See* Fed. R. App. P. 28(9)(A) (appellant's brief must contain "contentions . . . with citations to the authorities and parts of the record on which the appellant relies); *Flanigan's Enter. Inc. v. Fulton County*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (concluding that a plaintiff waived its argument by "fail[ing] to elaborate [on] or provide any citation of

authority in support . . . .") (citing *Continental Tech. Servs., Inc. v. Rockwell Int'l Corp.*, 927 F.2d 1198, 1199 (11th Cir. 1991)).

## CONCLUSION

We AFFIRM the award of a penalty of $75.00 per day to Mr. Wright. We REVERSE the award of penalties to Mrs. Wright and the children. We AFFIRM the award of attorney's fees.