**Ana EVERETT, Plaintiff-Appellant,**

**Donna Childress, Plaintiff,**

v.

**GRADY MEMORIAL HOSPITAL CORPORATION, d.b.a. Grady Health System, Stephanie Shaw, an individual, Defendants-Appellees.**

No. 16-13495

United States Court of Appeals, Eleventh Circuit.

(August 15, 2017)

---

8. The City also asserts that Inserection lacks standing.

Kimberly Noel Martin, Thomas F. Martin, Martin & Martin, LLP, Tucker, GA, for Plaintiff-Appellant

Randy C. Gepp, Raanon Gal, Kelly Casey Mullally, Taylor English Duma, LLP, Atlanta, GA, for Defendant-Appellee GRady Memorial Hospital Corporation

Randy C. Gepp, Kelly Casey Mullally, Taylor English Duma, LLP, Atlanta, GA, for Defendant-Appellee Stephanie Shaw.

Before WILLIAM PRYOR, MARTIN, and ROSENBAUM, Circuit Judges.

MARTIN, Circuit Judge:

Ana Everett appeals the District Court's grant of summary judgment in favor of Grady Memorial Hospital Corporation and Stephanie Shaw (collectively, "defendants"). Ms. Everett's claims arise out of the defendants' refusal to allow her to work from home after she was diagnosed with complications from her pregnancy. After careful consideration, we affirm the District Court.

## I. BACKGROUND

Grady hired Ms. Everett in 2001. In 2005, she became the Program Manager of Grady's Car Seat Program, which educates new parents about the importance of car seats and provides them to families who cannot afford them. Stephanie Shaw has been Ms. Everett's supervisor in this role since the summer of 2014.

As Program Manager, Ms. Everett is tasked with leading the Injury Free Coalition for Kids of Atlanta and managing Grady's Childbirth Education Program. According to Grady's job description of the position, Ms. Everett's essential job duties included organizing and implementing the Car Seat Program; developing program materials; coordinating safety classes for the program; and preparing all necessary documentation for the program. Grady listed her job requirements as, among other things, having "maximal" physical requirements including "standing, walking, stooping, bending, and pulling." The list of job requirements also said "[o]ccasional lifting of lightweight objects (up to 25 pounds) is required." The parties agree

that Ms. Everett's "primary duties" include overseeing the distribution of car seats; administering Grady's Car Seat Program; developing program materials; attending management meetings at Grady; supervising Donna Childress (one of the program's Health Educators); preparing reports; seeking grants; and conducting educational activities.

In January 2015, Ms. Everett brought this action against Grady, alleging the hospital deprived her of overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201. The District Court granted summary judgment in favor of the defendants on that claim after finding Ms. Everett is a FLSA-exempt employee. Ms. Everett does not appeal that decision. But due to events that happened after Ms. Everett filed her first complaint, she added additional claims.

In February 2015, Ms. Everett asked for intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601. The FMLA requires certain employers, including Grady, to provide employees with job-protected unpaid leave under certain circumstances, including pregnancy complications. Id. § 2612; see 29 C.F.R. § 825.120(a)(4), (b). Ms. Everett presented Grady with a doctor's note explaining this occasional leave would be necessary because she had been diagnosed with a high-risk pregnancy. Grady granted this request.

On April 28, 2015, Ms. Everett presented a new doctor's note requesting "light duty." According to Ms. Everett, her doctor actually preferred she be on bed rest, but would allow her to work at her desk with her feet up. Six days later, on May 4, 2015, Ms. Everett presented yet another doctor's note. This note clarified that her limitations included "no lifting" as well as no more than "15 minutes of standing/walking activity during each hour."

Based on these limitations, Ms. Shaw determined that Ms. Everett could no longer perform her job's essential functions, including "standing to teach class, lifting car seats weighing 15 pounds, walking to visit patients on other floors in the hospital, delivering car seats to patients, and supervising the car seat program, Childress, and the program volunteers." As a result, Ms. Shaw placed Ms. Everett on FMLA leave. Ms. Everett was told "you have 6 weeks of FMLA available to you," after which she would need "to go out on continuous leave of absence ... until you can return [to] full duty." Ms. Everett said she interpreted this "to mean that she would be terminated at the end of six weeks[,] which would have been prior to giving birth." She also disputed that carrying car seats and standing for more than 15 minutes per hour while teaching were "essential functions" of her job.

Based on these events, Ms. Everett moved for leave to amend her complaint on May 7, 2015. She sought to add a claim for FLSA retaliation. Grady responded by offering Ms. Everett the opportunity to return to her job with her doctor's instructed limitations; compensation for the days she had missed; and the restoration of any used FMLA leave. Ms. Everett refused this offer because, since prescribing the initial "light duty" limitations, her doctor diagnosed her with an incompetent cervix and now said she should work exclusively from home. She presented Grady with a doctor's note saying as much.

Grady determined that many of Ms. Everett's essential functions—specifically, teaching classes, observing and managing other employees in the Car Seat Program, meeting with patients, and accessing confidential records—could not be done exclusively from home. Ms. Everett acknowledged that she was not aware of any other employee supervised by Ms. Shaw who

was allowed to telecommute full-time. Nevertheless, Ms. Everett disputed Grady's determination that she couldn't perform her job completely from home. She said her essential functions were administrative tasks performed on a computer and that they "consisted of over 95% of what she did." Ms. Everett also emphasized that her position's job requirements, as stated by Grady, say that "[t]eleworking from home or other location, on call, and flex scheduling [are] required."

As these events played out, Ms. Everett twice amended her complaint. She added two new claims against the defendants, resulting in a total of four claims: (1) FLSA overtime; (2) FLSA retaliation; (3) failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101; and (4) pregnancy discrimination and retaliation under Title VII, 42 U.S.C. § 2000e.

After Ms. Everett had her baby, her doctor told her she could not work due to postpartum recovery and high blood pressure. Ms. Everett's FMLA leave expired in July, but Grady allowed her to remain on unpaid leave until she returned to her position on October 8, 2015.

The defendants moved for summary judgment against Ms. Everett on all claims. This District Court granted their motion. Ms. Everett appeals the grant of summary judgment as to all of her claims except her original FLSA overtime claim.

## II. STANDARD OF REVIEW

We review de novo the District Court's grant of summary judgment, viewing the facts and drawing all reasonable inferences in the light most favorable to the non-moving party. Rioux v. City of Atlanta, 520 F.3d 1269, 1274 (11th Cir. 2008). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment

as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We may affirm the District Court on any ground supported by the record, regardless of whether the District Court relied on it. See Krutzig v. Pulte Home Corp., 602 F.3d 1231, 1234 (11th Cir. 2010).

## III. THE CLAIMS

Ms. Everett appeals the District Court's grant of summary judgment in favor of the defendants on three claims: (1) failure to accommodate under the ADA; (2) pregnancy discrimination and retaliation under Title VII; and (3) FLSA retaliation. We address each in turn.

## A. ADA FAILURE TO ACCOMMODATE

To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) she is disabled; (2) she is a qualified individual; and (3) she was subjected to unlawful discrimination because of her disability. Holly v. Clairson Indus., LLC, 492 F.3d 1247, 1255–56 (11th Cir. 2007). For purposes of summary judgment, the defendants assume Ms. Everett is disabled as defined by the ADA. The dispositive issue on appeal is whether Ms. Everett is a "qualified individual."

Under the ADA, a "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). To survive summary judgment, a plaintiff must show there is a genuine issue as to whether she either "can perform the essential functions of [her] job without [reasonable] accommodation, or failing that, ... can perform the essential functions of [her] job with a reasonable accommoda-

tion." Holly, 492 F.3d at 1256 (quotation omitted). The District Court found Ms. Everett was not a "qualified individual" because her "request of full time work from home was not a reasonable accommodation," and thus granted summary judgment in favor of the defendants on this claim. More specifically, the court found her requested accommodation as not reasonable because it would have prevented her from performing essential functions of her job.

Ms. Everett argues the District Court erred in this finding. She says her requested accommodation of full time work from home was reasonable because it would not have stopped her from performing the essential functions of her job. She also says the District Court erred in finding Grady engaged in the interactive process required to determine a reasonable accommodation for her. We address each argument in turn.

### 1. Essential Functions

The "essential functions" of a job are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1); see Earl v. Mervyns, Inc., 207 F.3d 1361, 1365 (11th Cir. 2000) (per curiam). In deciding what functions are essential, the ADA says "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8); see 29 C.F.R. § 1630.2(n)(3)(i).

That being said, an employer's judgment is not "conclusive," because "then an employer that did not wish to be inconvenienced by making a reasonable accommodation could, simply by asserting that the function is 'essential,' avoid the clear congressional mandate." Holly, 492 F.3d at 1258 (emphasis omitted). This Court therefore considers a number of other nonexclusive factors in considering whether a particular function is essential: ·

(1) the amount of time spent on the job performing the function, (2) the consequences of not requiring the incumbent to perform the function, (3) the terms of the collective bargaining agreement, (4) the work experience of past incumbents in the job, and (5) the current work experience of incumbents in similar jobs.

D'Angelo v. ConAgra Foods, Inc., 422 F.3d 1220, 1230 (11th Cir. 2005) (quotation omitted); see 29 C.F.R. § 1630.2(n)(3).

■ Ms. Everett challenges three of the "essential functions" found by the District Court: teaching courses, supervising other employees, and meeting with patients.[1] She argues that her job description said she was responsible only for coordinating, as opposed to actually conducting, visits with patients and teaching classes. And she says that in any event, she spent very little time on these activities. Ms. Everett also contends she could supervise Ms. Childress and carry out all other administrative duties necessary for the Car Seat Program from home. Applying the essential-function factors, we disagree.

First, we consider the employer's judgment, including the employer's determina-

---

1. Ms. Everett also challenges the District Court's finding that accessing confidential records was an essential function that couldn't be performed from home. But even assuming there is a genuine dispute in the record about whether she could safely access confidential medical records from home, in light of our conclusion that the other three duties Ms. Everett challenges were indeed essential functions, we need not address this issue.

tion, the written job description, and testimony from the plaintiff's supervisors. 42 U.S.C. § 12111(8); Holly, 492 F.3d at 1257. Grady's position is clear: these were essential functions. Beyond that, the written job description summarized Ms. Everett's essential job duties as including organizing and implementing the Car Seat Program, developing program materials, coordinating safety classes for the program, and preparing all necessary documentation for the program. Grady listed her job requirements as, among other things, having "maximal" physical requirements including "standing, walking, stooping, bending, and pulling." It also said "[o]ccasional lifting of lightweight objects (up to 25 pounds) is required." The parties are in agreement that Ms. Everett's "primary duties" include overseeing the distribution of car seats; administering Grady's Car Seat Program; developing program materials; attending management meetings at Grady; supervising Ms. Childress; preparing reports; seeking grants; and conducting educational activities. Although Ms. Everett points out that the job requirements also said "[t]eleworking from home or other location, on call, and flex scheduling [are] required," it does not say that these things are required full time. Neither does Ms. Everett dispute that she never worked exclusively from home nor does she know of any other employees who did so. And Ms. Everett's supervisors all testified that her physical presence at the hospital was needed. Ms. Shaw, Ms. Everett's direct supervisor, testified that Ms. Everett needed to be at Grady in order to manage the Car Seat Program's "day-to day functions" including supervising Ms. Childress. Ms. Shaw also testified that Ms. Everett needed to be at Grady to teach "anywhere from two to three classes a week" and meet with patients. Fran Baker-Witt, the Executive Director of Women and Infant Services at Grady, testified that "the challenge" with Ms. Everett working from home was that "her essential functions ... required her to really be there. And it would require shifting additional responsibilities onto other people which in my opinion wouldn't have been fair because she is the manager of the program. So my preference would be for her to be on site to manage the program as well as the people that reported to her." Ms. Baker-Witt said it would certainly be possible for Ms. Everett to "work[ ] from home part-time and work[ ] at the office part-time," but did not think full-time work from home would be feasible. This evidence supports the District Court's finding that teaching, supervising, and meeting with patients were essential functions of Ms. Everett's job.

Second, we look at the nonexclusive factors listed in D'Angelo. 422 F.3d at 1230. Of these factors, only "the amount of time spent on the job performing the function" and "the consequences of not requiring [Ms. Everett] to perform the function" are relevant here. See id. Ms. Everett argues the job duties at issue took up only a very small amount of time in her schedule. Our review of the record shows otherwise. In March 2015, Ms. Everett emailed Ms. Shaw and Ms. Baker-Witt a copy of her schedule in which she "detail[ed]" her "teaching, operational, and administrative functions." According to the schedule Ms. Everett composed of her own work, she taught four courses for a total of five hours of teaching each week. And she spent an hour each week setting up for these classes. She was scheduled to meet with patients for a half-hour three days each week (another one-and-one-half hours each week). Ms. Everett and the two Health Educators in the Car Seat Program (including Ms. Childress) were scheduled to meet for a half-hour each morning (two-and-one-half hours per week). By Ms. Everett's own schedule then, these duties

took up 10 hours each week. Ms. Everett worked, on average, about 32 hours per week. The duties that Ms. Everett now says were non-essential thus constituted nearly one-third of her time each week, based on her own description of her schedule.[2]

Turning to the second relevant D'Angelo factor, the record shows that the consequence of not requiring Ms. Everett to perform these functions would have meant that other employees would have to take them over. Indeed, Ms. Everett says the Health Educators could have performed her responsibilities to teach and meet with patients. She also contends that because she "co-supervised" Ms. Childress with Ms. Shaw, she could have performed her co-supervision of Ms. Childress from home. But contrary to Ms. Everett's argument, Grady was not required to impose her duties on other employees. In fact, the need to do so where only a limited number of other employees were qualified to perform these duties is evidence that these functions were essential. Cf. Earl, 207 F.3d at 1365 ("A job function also may be essential if there are a limited number of employees among whom performance of the job can be distributed."); id. at 1367 ("[W]e have stated that an employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job." (quotation omitted and alteration adopted)). The additional D'Angelo factors therefore support the District Court's essential-functions finding as well.

On this record, we agree with the District Court that these three job duties—teaching classes, meeting with patients, and supervising other employees—were essential functions of Ms. Everett's position. The employer's judgment, the testimony of her supervisors, and Ms. Everett's own account of her schedule all show that her job consisted of not only leading the Car Seat Program but also actually performing some of its programming. We therefore affirm the District Court's finding that teaching, supervising employees, and visiting patients were essential functions of Ms. Everett's job.

## 2. Reasonable Accommodation

Having determined that these three duties were essential functions, we must now examine whether Ms. Everett's requested accommodation was a reasonable one. See id. at 1366 n.2. A "reasonable accommodation" for purposes of the ADA means "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R § 1630.2(o)(1)(ii). It is Ms. Everett's burden to identify an accommodation and demonstrate that it is reasonable, meaning that the accommodation would allow her to perform the job's essential functions. Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1255–56 (11th Cir. 2001).

**2.** Ms. Everett disputes that this schedule is a proper indication of her weekly activities and argues it was never implemented, claiming that she drafted the schedule only for Ms. Baker-Witt, who asked Ms. Everett to "justify" her job. Ms. Everett instead asserts that the January 2015 class attendance records, which indicate that Ms. Everett taught only two one-hour classes that month, reflect her actual time spent teaching. But no evidence exists—except Ms. Everett's self-serving statements, which conflict with the schedule she herself prepared—that these January 2015 attendance records are indicative of her weekly schedule. And even assuming that teaching and visiting patients are not essential functions of Ms. Everett's job, her supervisory role plainly is, and it could not reasonably be accommodated by her working at home, as discussed below.

Because we hold that teaching, supervising, and meeting with patients were essential functions of Ms. Everett's position, her requested accommodation—working from home full time—was not reasonable. Other employees necessarily would have had to take on, at least temporarily, these aspects of Ms. Everett's job. And "the ADA does not require the employer to eliminate an essential function of the plaintiff's job" or place it upon someone else. D'Angelo, 422 F.3d at 1229 (quotation omitted and alteration adopted). We therefore affirm the District Court's finding that Ms. Everett's requested accommodation of working exclusively from home was not reasonable.

### 3. Interactive Process

Ms. Everett also asserts that the District Court erred in finding that the defendants engaged in the interactive process required to determine a reasonable accommodation. In Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278 (11th Cir. 1997), this Court recognized the employer and employee may conduct "an informal interactive process" to determine a reasonable accommodation. Id. at 1286; see 29 C.F.R. § 1630.2(o)(3).

■ We agree with the District Court that Grady met any obligation it may have had to engage in this process. Ms. Everett made the same request to Grady—full-time work from home—on three occasions. The informal interactive process does not require the employer to provide the employee with her desired accommodation, only a reasonable one. Because Ms. Everett has "failed to identify any reasonable accommodation," there is "no basis for imposing liability on [the defendants] for failing to engage in an interactive process." Frazier-White v. Gee, 818 F.3d 1249, 1257–58 (11th Cir. 2016) (quotation omitted); see also Willis v. Conopco, Inc., 108 F.3d 282, 285 (11th Cir. 1997) (per curiam) ("[W]e

have held that, where a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of investigation into reasonable accommodation is unimportant."). We therefore affirm the District Court's grant of summary judgment for Grady on Ms. Everett's ADA claim.

### B. TITLE VII PREGNANCY DISCRIMINATION

The Pregnancy Discrimination Act amended Title VII to extend its protections to pregnancy, making clear that the terms "because of sex" or "on the basis of sex" include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k); see Young v. United Parcel Serv., Inc., 575 U.S. ----, 135 S.Ct. 1338, 1344–45, 191 L.Ed.2d 279 (2015). A plaintiff may prevail on a pregnancy discrimination claim under Title VII "by showing that her pregnancy 'was a motivating factor' for an employment decision." Holland v. Gee, 677 F.3d 1047, 1055 (11th Cir. 2012) (quoting 42 U.S.C. § 2000e-2(m)). Ms. Everett argues that the defendants waived summary judgment on some of her pregnancy discrimination claims. Alternatively, she says even if they did not, the District Court erred by granting summary judgment in favor of the defendants on the merits of her claims. We first address her waiver argument and then turn to the merits.

### 1. Waiver

As an initial matter, Ms. Everett contends the District Court should not have considered summary judgment on some of her pregnancy discrimination claims because the defendants' brief in support of their summary judgment motion did not directly address them. She argues the defendants therefore waived summary judgment on these claims, though the defendants did address the claims in their reply

brief. However, as the District Court recognized, it had the sua sponte authority to enter summary judgment as long as Ms. Everett had adequate notice. See Celotex, 477 U.S. at 326, 106 S.Ct. at 2554 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments sua sponte, so long as the losing party was on notice that she had to come forward with all of her evidence.").

■ The only question then is whether Ms. Everett was given adequate notice. See id.; Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997) ("[D]istrict courts must temper their exercise of th[e] power [to grant summary judgment sua sponte] by the need to ensure that the parties receive[d] adequate notice ...."). This Court has "made it clear that where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely appropriate even if no formal notice has been provided." Artistic Entm't, Inc. v. City of Warner Robins, 331 F.3d 1196, 1202 (11th Cir. 2003) (per curiam). In Artistic Entertainment, this Court said that a party has adequate notice where the evidentiary record is complete and summary judgment motions are before the District Court. See id.; see also Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999) (holding the District Court may enter summary judgment sua sponte where the claims involve a common factual question). These conditions were met in Ms. Everett's case. Discovery was complete, the parties had submitted their evidence, and they had briefed the underlying issues, which involved common elements of proof and similar arguments. And most significantly, the District Court granted Ms. Everett leave and an extension of time to file a surreply to respond to Grady's arguments raised for the first time in its reply brief, but she chose not to address the substance of the claims raised on reply. The District Court's consideration of summary judgment was therefore proper. See id. We thus turn to the merits of the court's summary judgment decision.

## 2. Pregnancy Discrimination Claims

Ms. Everett brought three pregnancy discrimination claims. She says: (1) Grady discriminated against her by forcing her into unpaid FMLA leave after she informed it of her pregnancy; (2) Grady discriminated against her by refusing to allow her to temporarily work from home after she informed it of medical complications related to her pregnancy; and (3) Grady retaliated against her for bringing this lawsuit by refusing to let her temporarily work from home. These claims are without merit.

### a. Claims One and Two

Ms. Everett's first two pregnancy discrimination claims are that: (1) Grady forced her into unpaid FMLA leave after she requested "light duty" and (2) Grady discriminated against her by refusing to allow her to work from home. The District Court granted summary judgment on these claims after finding Ms. Everett could not demonstrate a prima facie case of pregnancy discrimination because she did not proffer a comparator. In the alternative, the court found summary judgment was proper because Ms. Everett failed to show that Grady's nondiscriminatory reasons for denying her requested accommodations were pretextual.

In a pregnancy discrimination case that relies only on circumstantial evidence of discrimination, we apply the burden-shifting framework from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). See Holland, 677 F.3d at 1055. In Young, the Supreme Court outlined how this works in the con-

text of pregnancy discrimination claims. See 135 S.Ct. at 1353–54. First, a plaintiff "may establish a prima facie case by showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under Title VII." Id. at 1354 (quotation omitted). A plaintiff can do this by showing that "she belongs to the protected class, that she sought accommodation, that the employer did not accommodate her, and that the employer did accommodate others similar in their ability or inability to work." Id. (quotation omitted). Then, the employer can try to justify its refusal by providing "legitimate, nondiscriminatory reasons for denying her accommodation." Id. (quotation omitted). If such a reason is offered, the plaintiff "may in turn show that the employer's proffered reasons are in fact pretextual." Id.

Ms. Everett first argues she was not required to provide a comparator in order to survive summary judgment.[3] On this point of law, Ms. Everett is correct. As this Court has said, "the plaintiff's failure to produce a comparator does not necessarily doom the plaintiff's case." Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011). Instead, a plaintiff can present circumstantial evidence of an employer's discriminatory intent. See id.

■ But even assuming Ms. Everett provided enough circumstantial evidence to establish a prima facie case, she was

still required to show that the defendants' legitimate, nondiscriminatory reasons for denying her accommodation were pretextual. See Young, 135 S.Ct. at 1354; Rioux, 520 F.3d at 1277–78. To show pretext, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Rioux, 520 F.3d at 1275 (quotation omitted).

According to Ms. Shaw, based on the "light duty" limitation request, she "decided that Everett was unable to perform the essential functions of her job, including standing to teach classes, lifting car seats which weighed 15 pounds, walking to visit patients on other floors in the hospital, and delivering car seats to patients." Similarly, with regard to Ms. Everett's request to work full-time from home, Grady decided teaching classes, supervising employees, and meeting with patients were essential functions that could not be completed from home. Ms. Everett argues both these reasons were pretextual because (1) these were not essential functions of her job; and (2) Ms. Shaw's reason was "completely unbelievable" because she refused to speak directly with Ms. Everett and did not know all of the details of Ms. Everett's position.

Because we've concluded that teaching classes and meeting with patients were

---

3. Although in a single sentence in her brief, Ms. Everett says: "Here, Everett provides a comparator." Nevertheless, her entire argument for why the District Court should not have granted summary judgment is that she didn't need to provide a comparator. Ms. Everett never names her comparator nor does she provide any citation to where in the record she named a comparator for her claims. Under our precedent, when an appellant's brief makes only a "passing reference[]" to one of the District Court's holdings, "without advancing any arguments or citing any authorities to establish that they were error," we view that issue as abandoned. See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014). In her reply brief, Ms. Everett explains that she meant Ms. Childress was her comparator. But under our precedent, arguments made for the first time in an appellant's reply brief "come too late." Id. at 683. We therefore proceed under the assumption that the District Court's finding that Ms. Everett did not proffer a comparator was correct.

essential functions of Ms. Everett's job, Ms. Everett cannot rely on a contrary finding to show pretext for discrimination against her because she was pregnant. Under our precedent, "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer." Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) (quotations omitted). As we've set out above, it was reasonable for Grady to determine that teaching and visiting patients were essential functions of Ms. Everett's job. And a reasonable employer certainly might be motivated by not wanting to forego the essential functions of an employee's position. See id. Neither can we say Ms. Shaw's reluctance to speak with Ms. Everett directly nor her lack of familiarity with every detail of Ms. Everett's position rendered Ms. Shaw's testimony "unworthy of credence." Rioux, 520 F.3d at 1275 (quotation omitted). Without pointing to specific evidence that Ms. Shaw "was motivated by a discriminatory animus," Ms. Everett's bare allegations of Ms. Shaw's intent are not enough to overcome the defendants' proffered nondiscriminatory reason that Ms. Everett could not perform her essential functions with the requested accommodations. See Schaaf v. Smithkline Beecham Corp., 602 F.3d 1236, 1244 (11th Cir. 2010). On this record then, we cannot say the District Court erred in granting summary judgment in favor of defendants on Ms. Everett's first two claims of pregnancy discrimination.

### b. Claim Three

Summary judgment was proper on Ms. Everett's third claim as well. "In order to prevail on a retaliation claim, a plaintiff must establish the requisite causal connection between her statutorily protected conduct and the adverse employment action."

Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1354 (11th Cir. 1999). Ms. Everett's claim lacks the causal requirement.

■ Ms. Everett represented to the District Court that Grady's refusal to allow her to work from home constituted retaliation "due to her previous Complaints in the case." The problem for Ms. Everett is that she did not allege pregnancy discrimination in her previous complaints until her second amended complaint was filed on June 29, 2015. The retaliation Ms. Everett alleges—Grady's refusal to allow her to work from home—occurred before June 29, 2015. Grady could not possibly have retaliated against Ms. Everett for a complaint she had not yet filed. See id. ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." (quotation omitted)).

In an attempt to get around this problem, Ms. Everett now argues, for the first time on appeal, that what she really meant to say was that Grady retaliated against her on the basis of her "Charge of Discrimination" filed with the EEOC on May 11, 2015. We decline to allow Ms. Everett to amend her claim here on appeal. See Wright v. Hanna Steel Corp., 270 F.3d 1336, 1342 (11th Cir. 2001) ("Appellate courts generally will not consider an issue or theory that was not raised in the district court." (quotation omitted and alteration adopted)). We therefore affirm the District Court's grant of summary judgment in favor of the defendants on all of Ms. Everett's Title VII claims.

### C. FLSA RETALIATION

Last, Ms. Everett claimed that Grady retaliated against her for bringing a FLSA overtime claim by "forcing her on unpaid leave with the threat of termination" and

"refusing to permit [her] from temporarily working from home."[4] To establish a prima facie case of FLSA retaliation, a plaintiff must show: "(1) she engaged in activity protected under the act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." Wolf v. Coca-Cola Co., 200 F.3d 1337, 1342–43 (11th Cir. 2000) (quotation omitted and alteration adopted). For purposes of summary judgment, the defendants concede the first two elements of this showing.

In order to satisfy the third element, a causal connection, Ms. Everett must show she would not have suffered an adverse action "but for her assertion of FLSA rights." Id. at 1343. And because the defendants proffered legitimate reasons for the adverse actions, Ms. Everett must also show the "proffered reason is a pretext for [retaliating against her] for asserting FLSA rights." Id. For the same reasons we have already explained in the context of the Title VII claims, Ms. Everett has failed to show that the defendants' proffered reasons were pretextual. We therefore affirm the District Court's grant of summary judgment in favor of defendants on this claim.

## IV. CONCLUSION

We affirm the District Court's grant of summary judgment in favor of defendants on all claims.

**AFFIRMED.**

4. Ms. Everett also asserts that the District Court did not consider both of these claims on summary judgment. However, our review of the record shows the District Court did consider both claims, and in any event, we may affirm on any basis supported in the record. Krutzig, 602 F.3d at 1234.